UNITED STATES of America,
Plaintiff–Appellee,

v.

Darla Denean JONES, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Dwight Rolland SHELTON, Jr.,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Melvin PENN, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jacqueline Jones PENN, Defendant–
Appellant.

Nos. 93–5320, 93–5347, 93–
5370 and 93–5371.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 10, 1993.

Decided March 2, 1994.

**ARGUED:** Jane Moran, Williamson, West Virginia, for appellants. Victoria Boros Major, Assistant United States Attorney, Charleston, West Virginia, for appellee. **ON BRIEF:** Philip M. LaCaria, LaCaria & Hassan, Welch, West Virginia, for appellant Jones; Jane Charnock, Charnock & Charnock, Charleston, West Virginia, for appellant Jacqueline Penn; Kelly K. Kemp, Zeigler, Gunnoe & Kemp, Hinton, West Virginia, for appellant Shelton. Charles T. Miller, United States Attorney, Charleston, West Virginia, for appellee.

Before RUSSELL and HALL, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

Appellants Darla Denean Jones ("Jones"), Dwight Rolland Shelton, Jr. ("Shelton"), Jacqueline Jones Penn ("J. Penn") and Charles Melvin Penn ("C. Penn") entered into plea bargains whereunder they agreed to plead guilty to one count of an indictment and to provide aid to the government in apprehending a Maryland drug-kingpin. In return, the government agreed to dismiss the remaining counts against each in the indictment. Appellants appeal the sentences imposed following their guilty pleas. We affirm.

### I.

On July 2, 1992, a grand jury indicted numerous defendants, including the appellants, with 57 counts of illegal possession of food stamps, and substantive and conspiratorial violations of the racketeering laws and narcotics laws. Specifically, appellants were charged with involvement in the operation of a crack-cocaine base enterprise which distributed the majority of its crack in West Virginia. The enterprise was led by David

Alan Thompson, who, though named in the indictment, remains a fugitive. Thompson would obtain crack outside of West Virginia and would transport it in-state through a network of co-conspirators. Law enforcement agents purchased 81 grams of crack during 29 controlled transactions with the conspirators.

Appellants Shelton, J. Penn, C. Penn and Jones played key roles in the drug conspiracy. The residence of J. Penn and C. Penn, husband and wife, in Minden, West Virginia, was the central distribution point for the enterprise. J. Penn stored money and food coupons, profits from drug sales, at the residence until these proceeds could be transferred to Thompson. The Penns also engaged in direct distribution of crack, often to undercover agents, for money and food stamps.

Jones, J. Penn's daughter by a man other than C. Penn, shared with another conspirator the responsibility for coordinating the transfer of large quantities of crack from the Penn home for further distribution. Shelton was involved with the conspiracy's crack distribution operations in Beckley, West Virginia, and obtained and sold crack for the conspiracy.

Following their arrests, all the appellants were arraigned and released on bond. Subsequently, all appellants agreed to plead guilty to Count 2 of the indictment in return for the government's agreement to dismiss the remainder of the charges against the appellants.

In April of 1993, the district court sentenced Jones to 70 months imprisonment, a $3,000 fine and 3 years supervised release, both C. Penn and J. Penn to 87 months imprisonment and 2 years supervised release, and Shelton to 108 months imprisonment, a $5,000 fine and 3 years supervised release. Appellants appeal their sentences on various grounds.

## II.

At his sentencing hearing, C. Penn presented a physician's report stating that C. Penn, 61 years of age, suffers from numerous physical ailments. C. Penn sought a downward departure pursuant to U.S.S.G. §§ 5H1.1 and 5H1.4 on the ground of age and infirmity. U.S.S.G. § 5H1.1 provides, in pertinent part:

> Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration....

U.S.S.G. § 5H1.4 provides, in pertinent part:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

The district court rejected C. Penn's request, stating:

> The Court acknowledges that this defendant does have some medical problems and I'm sure that they are medical problems that are significant to the defendant.
>
> I am compelled, as counsel knows, to comply with the guidelines and the guideline definitions. And based on those definitions, I cannot reach the conclusion that Mr. Penn's condition constitutes extraordinary physical impairment as that term is defined by the Guidelines.
>
> Therefore, the Court finds no reason to depart from the sentence called for by the application of the Guidelines inasmuch as the facts are of the kind contemplated by the Sentencing Commission.

J.A. 324. The judge sentenced C. Penn to as minimal a sentence as otherwise allowable under the Guidelines.

C. Penn raises two arguments. First, he argues that the district court erred, on the merits, in determining that his age and health were not so extraordinary as to entitle

him to a downward departure. Second, he argues that the Sentencing Guidelines do not adequately allow the district judge to consider age and health.

### A.

█ C. Penn's first argument is not cognizable on appeal. In *United States v. Bayerle*, 898 F.2d 28, 30–31 (4th Cir.), *cert. denied*, 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990), Bayerle argued that the district court erred in denying him a downward departure based upon a claimed diminished capacity pursuant to U.S.S.G. § 5K2.13. Based upon an analysis of 18 U.S.C. § 3742, which enunciates the specific circumstances under which a criminal defendant may appeal a sentence, we concluded that the section does not allow a defendant to appeal a refusal to depart downward, except where the district court's refusal is based upon the mistaken view that it lacked the authority to depart. *Id.* at 30–31. Because the district court in *Bayerle* was aware that it had the authority to depart, but concluded, based upon the evidence presented, that a departure was not warranted, we did not review the district court's decision on its merits. *Id.* at 31.

Here, it is clear that the district judge was aware that she could grant a departure under appropriate circumstances, but concluded that C. Penn's age and health problems were not extraordinary enough to warrant such action. Consequently, we will not review the district court's decision.

C. Penn relies upon language in *United States v. Deigert,* 916 F.2d 916, 919 (4th Cir.1990), in urging that we can and should review the district court's decision. In *Deigert,* we were faced with two appellants' challenges to their sentences. One appellant challenged the district court's refusal to grant a downward departure pursuant to U.S.S.G. § 4A1.3, based upon the argument that the appellant's two prior convictions for alcohol-related traffic offenses caused a significant overstatement of the seriousness of the appellant's criminal history. We followed

*Bayerle* and refused to review the district court's decision.

The other appellant challenged the district court's refusal to grant him a downward departure on the ground that he had a tragic personal background. We remanded the case so that the district court could reconsider if it had mistakenly understood that such a departure was precluded by law. Clearly, on remand, if the district court had been aware that it could have granted such a departure, but felt that a departure was inappropriate, its previous decision would stand. Nevertheless, in the discussion of the second appellant's appeal, we offered the following explanatory language:

> Sentencing judges have the power to depart when confronted with circumstances "of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission," 18 U.S.C. § 3553(b). To the extent §§ 5H1.1–5H1.6 factors might relate to this case, the Guidelines permit departure when the circumstances are extraordinary. *United States v. Brand,* 907 F.2d 31 (4th Cir.1990). *Whether or not factors are extraordinary is a question of fact to which the clearly erroneous standard applies on appeal. United States v. Summers,* 893 F.2d 63 (4th Cir.1990), and *Brand, supra.* Whether or not a factor was adequately taken into consideration by the Sentencing Commission is a finding to which the de novo standard applies on appeal. See *Summers, supra,* at 66, 67.

916 F.2d at 919 (footnote omitted) (emphasis added).

C. Penn relies upon the emphasized language in the foregoing excerpt. To the extent we made reference to the proper standard for review relating to findings of fact with respect to downward departures, that statement was mere *dicta* because, as discussed above and as reaffirmed by *Deigert* itself, a decision by the district court in accordance with the Guidelines is not reviewable under *Bayerle.*[1] "[T]he proposition that

---

1. We note that *United States v. Summers,* 893 F.2d 63 (4th Cir.1990), and *United States v. Brand,* 907 F.2d 31 (4th Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990), relied upon by the court in *Deigert* in making the statement regarding review of findings of fact, involved appeals by the government, not by criminal defendants. *Bayerle,* in reaching

the factual finding underlying a district court's refusal to depart is subject to review ... has ... been overruled by *Bayerle*. *Bayerle* ... makes it clear that the only circumstance in which review is available is when the district court mistakenly believed that it lacked the authority to depart." *United States v. Underwood*, 970 F.2d 1336, 1338 (4th Cir.1992). Accordingly, we lack statutory standing to hear C. Penn's appeal to the extent it takes issue with the district court's finding that C. Penn's health and age do not constitute extraordinary ·circumstances warranting a downward departure or alternative form of punishment.

**B.**

■ We turn next to C. Penn's second argument, that age and physical condition are mitigating circumstances "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b), for which the district court could and should have granted a downward departure. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. As noted above, "[w]hether or not a factor was adequately taken into consideration by the Sentencing Commission is a finding to which the de novo standard applies on appeal." *Deigert*, 916 F.2d at 919. Only rarely will we conclude that a factor was not adequately taken into consideration by the Commission. *United States v. Bell*, 974 F.2d 537, 538 (4th Cir.1992).

We reject C. Penn's argument. The Guidelines explicitly address the factors of age and infirmity in sections 5H1.1 and 5H1.4. C. Penn claims that the Guidelines fail adequately to take into consideration his condition because he cannot endure the sentence he has received. We disagree. Where a defendant is unable, due to age and physical condition, to endure a sentence, the Guidelines do permit a downward departure. To the extent that C. Penn takes issue with

the district court's factual determination that his age and physical condition are not so extraordinary as to warrant a downward departure, we reject this argument as an attempt to evade the rule against review we adopted in *Bayerle*.

C. Penn also urges that the Guidelines, as constituted, do not adequately take into consideration age and health in light of Congress' intent, as expressed in the legislative history of the Sentencing Reform Act of 1984 (the "Act"), that district judges have leeway in making determinations such as the ones at issue here. In effect, C. Penn invites us to measure the adequacy of factors the Commission has clearly taken into consideration by reference to statements made by Congress during consideration of the Act.

■ We decline this invitation. We do not believe that a Guideline must be effectively rewritten, as appellant would have us hold, merely because it may be at odds with some portion of the Act's legislative history. Had Congress wished to ensure that its intent as to a particular factor found its way into the final Guidelines, Congress could itself have undertaken to draft the pertinent portion of the Guidelines. Congress did not choose this course, however, choosing instead to delegate this responsibility to the Commission pursuant to 28 U.S.C. § 994. Moreover, Congress had the option of tempering this delegation of authority with specific instructions. In fact, Congress exercised this prerogative with respect to the factors of age and physical condition: it explicitly instructed the Commission only to "consider *whether*" age and mental and physical condition "have *any relevance* to the nature, extent, place of service, or other incidents of an appropriate sentence, and [to] take them into account only to the extent that they do have relevance...." 28 U.S.C. § 994(d)(1), (5) (emphasis added). Thus, the legislative mandate is clear and the Commission has com-

its conclusion of nonappealability, explicitly relied upon the language of 18 U.S.C. § 3742(a), which lists the circumstances under which *a criminal defendant* may appeal a sentence.

Similarly, *United States v. Sanchez*, 933 F.2d 742 (9th Cir.1991), *United States v. Greenwood*, 928 F.2d 645 (4th Cir.1991), and *United States v. Carey*, 895 F.2d 318, 322 (7th Cir.1990), relied

upon by C. Penn, all involved appeals by the government. Finally, although *United States v. Daiagi*, 892 F.2d 31 (4th Cir.1989), also relied upon by C. Penn, involved an appeal by a criminal defendant, that case predates *Bayerle* and, in any event, its holding is not inconsistent with our holding in *Bayerle*.

plied with that mandate. *Cf. United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980)) ("If ... statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'"). Finally, because the Guidelines as promulgated by the Commission are submitted to and subject to modification or disapproval by Congress, *see* 28 U.S.C. § 994(p), if Congress feels that the Commission has not adequately taken into consideration a factor, it can substitute at that time Guidelines which, in its opinion, do adequately consider that factor. With respect to the Guidelines regarding age and physical condition, Congress did not exercise this option.[2] In sum, Congress has constructed a system which affords itself adequate opportunity to act to ensure that the Guidelines meet any requirements and assume any form Congress may deem appropriate. In the case of the factors of age and physical condition, there are numerous indicia that Congress is satisfied that the Guidelines, as constituted, adequately take age and physical condition into account. Consequently, C. Penn's reliance upon specific statements in the Act's legislative history with regard to the factors of age and physical condition is insufficient to support the conclusion that the Commission did not adequately take into account these factors.[3] The Commission adequately took age and physical condition into consideration in U.S.S.G. §§ 5H1.1 and 5H1.4, respectively, and, other than a departure authorized by the Guidelines, "no departure is permitted on the basis of circumstances adequately considered by the Sentencing Commission." *United States v. Bolden,* 889 F.2d 1336, 1339 (4th Cir.1989).

## III.

■ Pursuant to the Sentencing Guidelines, the district court attributed to appellant Shelton an offense level of 29 and a criminal history category of I, from which the district court properly determined the sentencing range applicable to Shelton to be 87 to 108 months imprisonment. The district court conferred upon appellant Shelton a sentence at the high end of the Guideline range applicable to him on the ground that Shelton had failed to aid law enforcement authorities in the apprehension of Thompson as, it was claimed, he could. Shelton argues that the district judge reached this determination in reliance only upon "very little testi-

---

**2.** We recognize that, where a Guideline promulgated by the Commission conflicts with the plain meaning of a statute, the mere fact that Congress may have approved the Guideline would be insufficient to resuscitate the Guideline. However, where, as here, the Guideline clearly conforms to the statutory mandate, or where the statutory mandate is ambiguous, the fact that Congress approved the Guideline is one indicium that the Guideline, in Congress' opinion, adequately takes the factor to which it is addressed into consideration.

**3.** The Third Circuit in *United States v. Uca,* 867 F.2d 783, 787 (3d Cir.1989), stated: "[I]n exercising our review function on the question whether the Commission adequately took certain factors into consideration this court should respect the overriding congressional purpose of reducing sentence disparity and achieving general uniformity of treatment." In reaching the conclusion that "the overriding congressional purpose" in creating the Sentencing Guidelines system was to "reduc[e] sentence disparity and [to] achiev[e] general uniformity of treatment," *id.,* the Third Circuit relied upon the Act's legisla-

tive history, *see id.* Although the appropriateness of the Third Circuit's directive in *Uca* is not before us today, we note that our holding today does not conflict with this directive. To the extent that our reasoning is inconsistent with the reasoning of the Third Circuit in *Uca,* we would note that resort need not be had to the Act's legislative history to justify the Third Circuit's directive. Title 28, United States Code, section 991(b)(1)(B) states that one purpose of the Sentencing Commission is to "establish sentencing policies and practices ... that ... provide certainty and fairness in meeting the purposes of sentencing, *avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct....*" 28 U.S.C. § 991(b)(1)(B) (emphasis added). Further, 28 U.S.C. § 994(f) explicitly instructs "[t]he Commission, in promulgating guidelines ..., [to] promote the purposes set forth in section 991(b)(1), with particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and *reducing unwarranted sentence disparities.*" *Id.* § 994(f) (emphasis added). A policy statement in the Guidelines echoes these concerns. *See* U.S.S.G. Ch. 1, Pt. A3, p.s.

mony," Appellants' Br. 25, and in the absence of "hard evidence," *id.* at 23.

We have no jurisdiction to consider Shelton's contention. Just as we determined in *Bayerle* that 18 U.S.C. § 3742(a) precludes a criminal defendant from seeking review of a sentencing court's discretionary decision not to depart downward, in *United States v. Porter*, 909 F.2d 789, 794–95 (4th Cir.1990), we held that that same section also precludes a criminal defendant from seeking "review of a sentencing court's discretion in setting a sentence anywhere within a properly calculated sentencing range," *id.* at 794.

Shelton's argument on appeal relates to the factfinding underlying the district court's discretionary decision to sentence him at the high end of the applicable Guideline range. He does not suggest that the district court imposed a sentence in violation of law or as a result of an incorrect application of the Guidelines.[4] *See* 18 U.S.C. § 3742(a). Consequently, we have no statutory authority to consider Shelton's argument.[5]

### IV.

█ All appellants challenge their sentences as violative of the equal protection prong of the Fifth Amendment's Due Process Clause, on the ground that the sentences they received were unconstitutionally harsher than the sentences they would have received had they been dealing in like quanti-

ties of cocaine powder instead of crack. Appellants also note that most individuals convicted of crack offenses are black, while most individuals convicted of "other" cocaine offenses are white.

Because this ground was not raised below, it can be a ground for reversal only if plain error is shown. Fed.R.Crim.P. 52(b). Once again, however, even ignoring this hurdle, appellants' challenge is unsuccessful. We recently considered and rejected an identical equal protection challenge to the Sentencing Guidelines. *United States v. Bynum*, 3 F.3d 769, 774–75 (4th Cir.1993), *cert. denied*, ––– U.S. –––, 114 S.Ct. 1105, 127 L.Ed.2d 416 (1994). *See United States v. Thomas*, 900 F.2d 37, 39–40 (4th Cir.1990). Thus, appellants' argument fails.

### V.

Each of the appellants in this case was charged with involvement in numerous illegal transactions. Each of the transactions in the indictments was coordinated and monitored by law enforcement authorities with the help of confidential informants. These transactions occurred over the space of several months. Appellants

submit that they were denied due process of law where law enforcement authorities and those persons acting under their control made purchases for the purpose of

---

4. Pursuant to 18 U.S.C. § 3553(c):

The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
(1) is of the kind, and within the range, [established by the Sentencing Guidelines] and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or
(2) is not of the kind, or is outside the range, [established by the Sentencing Guidelines], the specific reason for the imposition of a sentence different from that described.

Because the Guideline range applicable to Shelton does not exceed 24 months, the additional requirement of section 3553(c)(1) has no role here. We therefore have no occasion to consider whether and, if so, to what extent, the failure of a sentencing court to comply with that requirement would be reviewable by this Court. *See United States v. Woodrum*, 959 F.2d 100, 101 (8th Cir.1992). We also observe that, were the sentence imposed upon Shelton in excess of the maximum sentence included in the applicable

Guideline range, review could be had under 18 U.S.C. § 3742(a)(3). *See, e.g., United States v. Rusher*, 966 F.2d 868, 882 (4th Cir.), *cert. denied*, ––– U.S. –––, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992). This, of course, is not the case here.

5. Shelton also urges that the district court erred in sentencing him more harshly than it did C. Penn or J. Penn, even though all three were assigned the same Guideline range. To the extent that Shelton argues that this was an abuse of discretion, review of such a claim was specifically foreclosed by this Court in *Porter*. To the extent that he claims entitlement to a downward departure on this ground, his argument is without merit. *See United States v. Ellis*, 975 F.2d 1061, 1066 (4th Cir.1992), *cert. denied*, ––– U.S. –––, 113 S.Ct. 1352, 122 L.Ed.2d 733 (1993); *United States v. Richardson*, 939 F.2d 135, 139 (4th Cir.), *cert. denied*, ––– U.S. –––, 112 S.Ct. 599, 116 L.Ed.2d 623 (1991) *and* ––– U.S. –––, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992).

manipulating the base offense level. Law enforcement officials determined the amount of crack cocaine sought by confidential informant[s] knowing that pursuant to the Sentencing Guidelines the defendant would be sentenced based on this weight.

Appellants' Br. 32–33. Appellants claim that the Sentencing Commission failed adequately to take this theory into consideration in promulgating the Guidelines, *see* 18 U.S.C. § 3553(b), and that the theory entitles them to a downward departure.

Appellants did not raise this issue below, and therefore, once again, must demonstrate plain error. Fed.R.Crim.P. 52(b).

Appellants term what they accuse the government of having engaged in as "sentencing entrapment". We perceive appellants' argument as raising two related, but distinct, claims, neither of which has application here.

### A.

In support of their position, appellants rely principally, if not solely, on the opinion of the district court in *United States v. Barth,* 788 F.Supp. 1055 (D.Minn.1992), *aff'd in part and vacated in part,* 990 F.2d 422 (8th Cir. 1993).[6] There the district court, in reliance upon 18 U.S.C. § 3553(b), awarded the defendant a downward departure on the ground that the government had engaged in what it characterized as "sentencing entrapment". Specifically, the district court found that law enforcement authorities had conducted several "buys" for the sole purpose of exposing the source of the drugs being purchased. Said the district court:

> [T]he Court finds that buys five through eight were for an investigatory purpose unrelated to the apprehension of this defendant. While the investigatory purpose was unquestionably a legitimate one, the

statutory purpose of guideline sentencing do not permit this Court to penalize a defendant because an agent delayed the arrest to reach a higher-level suspect.

*Id.* at 1058. The Eighth Circuit vacated the defendant's sentence. The court of appeals disagreed with the district court's understanding of "sentencing entrapment", which the Eighth Circuit defined as " 'outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant.' " *United States v. Barth,* 990 F.2d 422, 424 (8th Cir.1993) (alteration in original) (quoting *United States v. Rogers,* 982 F.2d 1241, 1245 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993)) (internal quotation omitted). Although the Eighth Circuit did not reject the possibility that there could be cases where a downward departure would be proper as a result of sentencing entrapment, as it had defined it, the court nevertheless held that, on the facts presented, no application of the theory was warranted. *Id.* at 424–25.

We believe the distinction between the district court's and court of appeals' definitions of "sentencing entrapment" in *Barth* to be significant. Under the district court's definition, whether the defendant is predisposed to commit the crime charged is irrelevant; the focus is upon the motives of the law enforcement authorities. Such a definition, if accepted, however, would render the moniker "sentencing entrapment" quite inappropriate because, after all, "it is clear ... that the essential element of the entrapment defense is the defendant's lack of predisposition to commit the crime charged." *United States v. Hunt,* 749 F.2d 1078, 1085 (4th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).[7] *See United States v.*

---

6. We note that, in their initial brief, appellants, by their counsel, "overlook" the fact that the district court's decision in *Barth* was ever appealed to the Eighth Circuit and that the portion of the district court's decision relied upon by appellants was vacated by the court of appeals.

7. We believe the analogy between regular entrapment and sentencing entrapment to be an apt one. It makes little sense to us to adopt a rule that would not provide an entrapment defense to

a defendant who was predisposed to commit an illicit narcotics transaction where an undercover agent deliberately bargained for an amount of narcotics in excess of the applicable statutory minimum, yet would provide a ground for a downward departure to the same defendant merely because the undercover agent deliberately bargained for an amount of narcotics in excess of some amount relevant for sentencing purposes.

*Bara,* 13 F.3d 1418, 1420 (10th Cir. Jan. 5, 1994); *United States v. Frazier,* 985 F.2d 1001, 1003 (9th Cir.1993); *United States v. Connell,* 960 F.2d 191, 194 (1st Cir.1992).

It would seem that the doctrine relied upon by the appellants and defined, though we think incorrectly, by the district court in *Barth* as "sentencing entrapment", is more closely akin to the possible defense that "the government's conduct of the investigation was so outrageous as to violate due process...." *Hunt,* 749 F.2d at 1087. This is "a claim distinct from ... entrapment...." *Id.* Under the sentencing analogy to such a theory, outrageous conduct of the government would justify a reduced sentence.

The distinction between entrapment and outrageous government conduct in the sentencing context has been adopted by three of our sister circuits. First, in *United States v. Connell,* 960 F.2d 191 (1st Cir.1992), the appellant advanced a claim which he called "sentencing entrapment". The First Circuit stated: "[Appellant's] predisposition to engage in illegal currency transactions makes the use of the term 'sentencing entrapment' both inapposite and misleading. His complaint ... is that the government practiced what might more accurately be called 'sentencing factor manipulation.'" *Id.* at 194.[8]

Following its acceptance of "sentencing entrapment" in *Barth,* in *United States v. Shephard,* 4 F.3d 647, 649 (8th Cir.1993), the Eighth Circuit explicitly adopted the distinction we discuss above. The appellant in *Shephard* argued that the sting operation to which he was subjected "was too long and involved too many buys...." *Id.* The court noted: "Shephard's [argument] is not properly an entrapment argument, for it focuses not on whether Shephard was predisposed to commit the crime, but on whether the government stretched out the investigation merely to increase the sentence Shephard would receive." [9] *Id.* Citing the First Circuit's opinion in *Connell,* the Eighth Circuit adopted the term "sentence manipulation" for the theory that outrageous government conduct that offends due process could justify a reduced sentence.[10] *Shephard,* 4 F.3d at 649. Although it held that the theory had no application in that case, the Eighth Circuit stated that it could conceive of cases where the theory might have application. *Id.*

Finally, in *United States v. Cotts,* 14 F.3d 300, 306 n. 2 (7th Cir. Jan. 7, 1994), the Seventh Circuit acknowledged the distinction we today adopt.

For clarity's sake, we too shall restrict our use of the appellation "sentencing entrapment" to the first theory, an essential element of which is lack of predisposition on the part of the defendant. We shall adopt the Eighth Circuit's use of the term "sentencing manipulation" to refer to the second theory.[11]

---

8. We note that, in light of subsequent language used in *Connell,* "sentencing factor manipulation", as defined by the First Circuit, can be seen as encompassing "sentencing entrapment" as defined by the Eighth Circuit in *Barth* and the sentencing analogy to the defense of outrageous government conduct. First, the *Connell* court stated that "sentencing factor manipulation" "requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense ... or due process claim, ... must sometimes be filtered out of the sentencing calculus". *Connell,* 960 F.2d at 194 (citations omitted). Moreover, the court's conclusion that what it termed "sentencing factor manipulation" was inapplicable in the case before it seems to rest, at least in part, upon the appellant's evident predisposition. *See id.* at 195–96. Finally, however, in conclusion, the First Circuit observed: "We can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime." *Id.* at 196.

Thus, we believe it unclear as to whether, in *Connell,* the First Circuit adopted the same distinction that we adopt here. As we note below, however, the Eighth Circuit cited *Connell* when it adopted this distinction.

9. We note that the theory upon which the district court in *Barth* granted a downward departure seems, under the nomenclature adopted by the Eighth Circuit, to us to be more akin to "sentencing manipulation" than "sentencing entrapment". Nevertheless, the Eighth Circuit in *Barth* rejected the theory using a "sentencing entrapment" analysis.

10. As noted above, *see supra* note 8, we are not so sanguine about the First Circuit's holding in *Connell.*

11. Our use of this terminology is subject to the *caveat* that it is not clear that our usage of the phrase accords with that of the First Circuit in *Connell. See supra* note 8.

We emphasize that our selection of terminology is done for the sake of clarity only and is not meant to indicate that we accept the viability of either theory. It is to the viability of the two theories that we now turn.

## B.

■ Of the courts of appeals to have explicitly addressed the viability of "sentencing entrapment" and related doctrines, one has apparently rejected "sentencing entrapment" as a matter of law. In *United States v. Williams*, 954 F.2d 668, 672–73 (11th Cir. 1992), the appellant argued that he had been subjected to "sentencing entrapment" based upon the facts that the government allowed two co-defendants to keep certain profits made from the sale of narcotics, that the government offered narcotics for sale to the appellant at half the market price, and that the government delivered the narcotics without first demanding payment from the appellant. Without much analysis and without drawing any distinction, such as the one we have drawn here, between different theories of entrapment and manipulation, the Eleventh Circuit, "as a matter of law, ... reject[ed appellant's] sentence entrapment theory." *Id.* at 673.

As noted above, the First and Eighth Circuits both have drawn a distinction between sentencing entrapment and sentencing manipulation and seem to have recognized the potential for application of both theories in appropriate cases. However, neither of these courts of appeals has yet applied either "sentencing entrapment" or "sentencing manipulation" in any case. Indeed, no case has been cited to us in which the application of either theory has been upheld, and we are aware of no such case.

We have never spoken to the legal viability of "sentencing entrapment" theory, and need not do so here.[12] It is clear that, on the facts of the case at bar, even if it were good law, it would have no application here. Appellants do not even suggest that law enforcement authorities coaxed them into engaging in illicit transactions in which they otherwise would not have engaged.

■ With respect to "sentencing manipulation" theory, the Supreme Court has never decided whether outrageous government conduct can serve as a valid defense to a crime, let alone as a justification for a downward departure for sentencing purposes. We have opined that a defendant who has been subjected to outrageous government conduct may be able to raise that in order to defeat a subsequent prosecution, *United States v. Goodwin*, 854 F.2d 33, 36–37 (4th Cir.1988), but, if so, only in rare cases, *United States v. Daniel*, 3 F.3d 775, 779 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1101, 127 L.Ed.2d 413 (U.S.1994). "As a practical matter, only those claims alleging violation of particular constitutional guarantees are likely to succeed." *United States v. Jones*, 13 F.3d 100, 104 (4th Cir. Dec. 21, 1993). We would note our skepticism as to whether the government could ever engage in conduct not outrageous enough so as to violate due process to an extent warranting dismissal of the government's prosecution, yet outrageous enough to offend due process to an extent warranting a downward departure with respect to a defendant's sentencing. *Accord United States v. Cotts*, 14 F.3d 300, 306 n. 2 (7th Cir. Jan. 7, 1994). However, we conclude that, here, we need not decide whether the theory of sentencing manipulation has any basis in law for, on the facts presented, it would, in any event, be inapplicable. Appel-

---

**12.** Application note 17 to U.S.S.G. § 2D1.1 now provides:

If, in a reverse sting operation (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to

purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, comment. (n. 17). This application note became effective only on November 1, 1993, U.S.S.G. App. C amt. 486, and therefore has no application here. We express no opinion as to any standard governing application of this application note, or as to whether the Commission has now adequately taken into consideration the theories of "sentencing entrapment" and "sentencing manipulation".

lants invite us to adopt a rule that, in effect, would find the conduct of an investigation by the government "outrageous" whenever the government, even though it has enough evidence to seek an indictment for some crime, opts instead to wait in favor of continuing its investigation. We decline this invitation, the acceptance of which, we believe, would unnecessarily and unfairly restrict the discretion and judgment of investigators and prosecutors.

Our conclusion rests on the lack of any showing that the government's conduct can be characterized as "outrageous." Just as it is not outrageous for law enforcement authorities proceeding in an undercover "buy" to attempt to bargain with a seller of narcotics into selling an amount which constitutes a crime for the sole purpose of obtaining a conviction, we find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold. We do not rest our decision upon a finding, as no doubt could be made,[13] that the government had a legitimate purpose in continuing to conduct drug transactions with the appellants over an extended period of time, i.e., the hope of locating, apprehending and convicting Thompson. We decline to impose a rule that would require the government to come forward with a purpose or motivation, other than its responsibility to enforce the criminal laws of this country, as a justification for an extended investigation or for any particular step undertaken as part of an investigation.[14] We also decline to adopt a similar rule that would require

district courts to speculate as to the motives of, or to ascribe motives to, law enforcement authorities. Due process requires no such ruminations. *See Connell,* 960 F.2d at 196 ("By their nature, sting operations are designed to tempt the criminally inclined, and a well-constructed sting is often sculpted to test the limits of the target's criminal inclinations. Courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties.").

We conclude that there is no error, let alone plain error, by virtue of the government's conduct in engaging in drug transactions with these appellants.

### VI.

For the reasons stated, appellants' assignments of error are either meritless or not cognizable on appeal.

*AFFIRMED IN PART AND DISMISSED IN PART*

---

13. Although such a finding of fact can clearly be inferred from the record, because this argument was not raised before the district court, no such finding was made below.

14. We note that the Eighth Circuit in *Shephard,* in reaching its conclusion that the government had not engaged in "sentencing manipulation", cited

> the government['s] argu[ment] that the continuing transactions were material not only to Shephard's own conviction but to breaking another substantial cocaine ring in the city[, and] ... that there was substantial evidence of other drug dealings by Shephard and that he possessed large amounts of cash far exceeding

the $6,000 cash the government gave him in the course of the controlled buys.

4 F.3d at 649. The court then observed, "The district court did not rule or comment on this statement, in part because of Shephard's disruptive behavior at sentencing." *Id.*

We are not clear as to whether the court of appeals relied upon the government's explanation for continuing its investigation. We do not believe it necessary to require the government to make such arguments absent evidence of bad faith on the part of the government. To the extent the Eighth Circuit held otherwise in *Shephard,* we disagree.