23 F.3d 403
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Ray HALL, Defendant-Appellee.
 No. 93-5251.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1994.
Decided: May 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-92-78-F)
 Argued: Lewis Alston Thompson, III, Banzet, Banzet & Thompson, Warrenton, NC, for appellant.
 Christine Witcover Dean, Asst. U.S. Atty., Raleigh, NC, for appellee.
 On Brief: James R. Dedrick, U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 REMANDED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-appellant James Ray Hall ("Hall") challenges his sentence, imposed following conviction on charges of conspiring to distribute cocaine, substantive distribution of cocaine, and laundering of monetary instruments. He claims to have been the victim of sentencing manipulation and also claims that his criminal history category was miscalculated. Hall's sentencing manipulation argument is devoid of merit, but the district court's determination of Hall's criminal history category was inadequate. We therefore remand Hall's case for the sole purpose of undertaking an appropriate analysis in this regard.
 
 I.
 
 2
 Only a cursory understanding of the facts is necessary to our disposition of this case. In 1989, a "task force" composed of federal and local law enforcement authorities launched an investigation of Hall and his girlfriend, Cynthia Phelps ("Phelps"). During 1991 and 1992, employing confidential informants and undercover agents, investigators staged purchases of varying amounts of cocaine from Hall and Phelps at various locations in the area of Louisburg, North Carolina. Surveillance agents observed parts of these transactions during the fall of 1991 and spring of 1992. On one occasion, agents were able to observe, and, with the use of hidden radio equipment, listen to, one of Hall's narcotics transactions in its entirety. Agents also observed and tape-recorded another conversation involving cocaine sales between Hall and a confidential informant.
 
 
 3
 Hall was arrested on unrelated state charges during the summer of 1992. See J.A. 329. Subsequently, a federal grand jury handed up an indictment charging Hall with one count of conspiracy to possess with intent to distribute cocaine from January 1980 to June 10, 1992, in the Eastern District of North Carolina, in violation of 21 U.S.C. Sec. 841(a)(1); and with nine counts of substantive distribution of cocaine on occasions dating from September 19, 1991, through June 5, 1992. Phelps was also charged in the indictment. A superseding indictment added one count of laundering of monetary instruments, in violation of 18 U.S.C. Sec. 1956(a)(1), against Hall. When the matter came to trial, Phelps entered into a plea agreement and agreed to testify against Hall.
 
 
 4
 Phelps was a key government witness at trial. She testified as to her contacts with Hall dating back to the "early 80's." J.A. 18. In particular, Phelps testified that she moved in with Hall in 1988 and became aware of, and a part of, his drug business. She explained the methods used by Hall in procuring and then selling and distributing cocaine, and what Hall did with proceeds from drug sales.
 
 
 5
 A jury convicted Hall on all counts. Hall appeals his sentence on the ground that the district court erred in calculating the amount of cocaine attributable to him, and on the ground that the district court erred in calculating his criminal history category.
 
 II.
 
 6
 Hall first urges that his sentence was "manipulated by the [g]overnment," Appellant's Br. 8. He argues that, because the task force investigating his narcotics activities could have arrested him sooner but did not, in favor of continuing to engage in undercover "buys" from him,[1] the drugs he sold to confidential informants later in the investigation should not be counted against him. In effect, Hall argues that the government should have arrested him as soon as it legally could have.
 
 
 7
 In our recent decision in United States v. Jones, --- F.3d ----, 1994 WL 61035 (4th Cir. Mar. 2, 1994), we addressed the notion of entrapment and manipulation under the sentencing guidelines. Jones, without acknowledging the legality of either, distinguished between the theories of "sentencing entrapment" and "sentencing manipulation". See id. at ----------, 1994 WL 61035 at * 6-* 8. A valid claim of sentencing entrapment, if the theory has any vitality, requires a showing of lack of predisposition. Id. at ----, 1994 WL 61035 at * 8. Here, no such suggestion of "lack of predisposition" is presented: the mere fact that the government may have had cause to arrest Hall, but instead chose to continue to stage purchases of cocaine from him, in no way reflects upon Hall's predisposition to engage in those subsequent purchases. Hence, there was no "sentencing entrapment".
 
 
 8
 "Sentencing manipulation", by contrast, requires no showing of lack of predisposition; it is the sentencing analog of the "outrageous government conduct" defense. Id. at ----, 1994 WL 61035 at * 7. The conduct of the government in choosing not to arrest Hall, even though it could have, in favor of continuing its investigation, does not even approach "outrageous" conduct. See id. at ----, 1994 WL 61035, at * 9.
 
 III.
 
 9
 U.S.S.G. Sec. 4A1.1 directs the sentencing judge to determine a defendant's criminal history category based upon the sum of points attributed to the defendant, in part, according to the defendant's "prior sentence[s]". "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. Sec. 4A1.2(a)(1).
 
 
 10
 The district court considered three of Hall's prior sentences as having been imposed "for conduct not part of the instant offense": one imposed for a December 27, 1980, arrest for "Maintaining a Dwelling for Keeping Controlled Substances" in Louisburg, Franklin County, N.C.; one imposed following a December 29, 1982, arrest for "Possession of Cocaine" in Louisburg, Franklin County, N.C.; and one following a May 10, 1988, arrest for "Simple Possession of Cocaine" in Louisburg, Franklin County, N.C. Based on this, the district court included these prior sentences in the calculation of Hall's criminal history category. Appellant argues:
 
 
 11
 It is clear that the State Court convictions arose out of and during the time of the conspiracy for which the defendant has been convicted. All of these convictions involved powder cocaine, occurred in Franklin County during the time alleged in the indictment and involved drugs obtained from the same general sources as set out in the testimony of the [g]overnment's witnesses....
 
 
 12
 The Franklin County drug convictions should not be used in computing the defendant's criminal history. These convictions are not "prior sentences" in that they were a part of a single scheme or plan, i.e., the conspiracy of which the defendant was convicted. These convictions in State Court constitute conduct that is "part of the instant offense".
 
 Appellant's Br. 12.[2]
 
 13
 When faced with a question such as the one at hand,
 
 
 14
 the appropriate inquiry is whether the "prior sentence" and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.
 
 
 15
 United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir.1992) (citations omitted).
 
 
 16
 Here, the district court engaged in no such inquiry; rather the court summarily concluded, "I think the prior convictions are not part of the relevant conduct in this particular case." J.A. 346. We remand this case to the district court in order that it might conduct a proper inquiry and reach a reasoned conclusion with regard to this matter.
 
 IV.
 
 17
 We remand this case to the district court for resentencing consistent with this opinion.
 
 REMANDED FOR RESENTENCING
 
 
 [1]
 Indeed, authorities working with the task force never did arrest Hall on these charges; as noted above, he was indicted on these charges only after his arrest on unrelated state offenses
 
 
 [2]
 Although appellant did not raise the point in written objections to the presentence report, he did raise it at his sentencing hearing