60 F.3d 826
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Edward MILLS, Defendant-Appellant.
 No. 94-5377.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1995.
Decided: July 13, 1995.
 
 ARGUED: Andrea Celestine Long, Boone, Beale, Carpenter & Cosby, Richmond, VA, for appellant. N. George Metcalf, Asst. U.S. Atty., Richmond, VA, for appellee. ON BRIEF: David E. Boone, Boone, Beale, Carpenter & Cosby, Richmond, VA, for appellant. Helen F. Fahey, U.S. Atty., Richmond, VA, for appellee.
 Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Edward Mills was convicted of conspiracy to distribute crack cocaine, possession with intent to distribute crack cocaine, and possession with intent to distribute cocaine powder, and sentenced to 210 months in prison. On appeal, he contends that (1) the evidence was insufficient to support a guilty verdict, (2) the district court committed various errors in sentencing him, (3) the differential in sentencing between offenses involving crack cocaine and those involving cocaine powder violates his right to equal protection, and (4) his trial counsel was ineffective. For the reasons that follow, we affirm.
 
 
 2
 On August 17, 1993, Mills and a co-defendant, Chris Owens, arrived at the house of Mills' cousin, Albert Hicks. According to Hicks, Mills intended to sell an eight ball ( 1/8 ounce) of cocaine powder to Owens. Once in Hicks' house, Hicks provided an ounce of cocaine to Mills, and Mills began to measure the cocaine powder on a scale when the police arrived with a search warrant. Hicks' house had been under police surveillance, and within 10-15 minutes of Mills' arrival at the house, the police executed the search warrant based on information provided by informants. Upon entering the house, police saw Mills and Owens bolt from the kitchen area and flee through the house. Mills, Owens, and Hicks were apprehended and given their Miranda warnings. Inspection of Hicks' house revealed a cache of drugs, drug paraphernalia, and weapons, particularly in the kitchen. From the kitchen table police seized pagers, a cutting agent (Manitol), and an electronic scale with 11.61 grams of cocaine powder on it; from the kitchen floor, 1.60 grams of cocaine powder; and from the bedroom, 15.4 grams of cocaine powder. During the search, one officer noticed that a ceiling tile was out of position and poked that area, at which time a potato chip bag fell from the ceiling. At the same time, Hicks asked, "Have they found anything?" or "Did they find it?". In response, Mills, who was observing the police, uttered, "Yes, they found it." The potato chip bag contained 195.75 grams of cocaine powder and 215.51 grams of crack cocaine. Police also found .11 grams of marijuana in the living room. All told, the confiscated drugs totaled 224 grams of cocaine powder, 215.55 grams of cocaine base, and .11 grams of marijuana. Mills was found with $1,709 in his pocket. Additionally, the police recovered two firearms from the premises, a .357 Magnum and a .380 caliber pistol. According to Hicks, Mills had bought the pistols for him.
 
 
 3
 At trial, Hicks testified against Mills in accordance with a plea agreement. Hicks stated that he and Mills had an agreement whereby Mills paid Hicks' rent and utilities and provided him with money and drugs, and Hicks allowed Mills' to use Hicks' house to store and sell drugs. Hicks also testified that the drugs in the potato chip bag belonged to Mills, that Mills had the keys to his house, and that Mills furnished him with two guns to protect the drugs.
 
 
 4
 * Challenging the sufficiency of the evidence, Mills contends that because Hicks--who provided the most significant evidence against Mills--had a prior criminal record, he therefore could not be believed. However, it is not our function to reassess the credibility of witnesses. Moreover, even without Hicks' testimony, sufficient evidence was offered to convict Mills based on the testimony of police officers who raided Hicks' house where Mills was engaging in drug trafficking.
 
 II
 
 5
 Mills attributes a number of errors to the district court in connection with his sentencing. He contends that the district court clearly erred in attributing to him a total of 224 grams of cocaine powder and 215 grams of crack cocaine. In reaching this conclusion, the court credited the testimony of Hicks and the officer at the scene and discredited the testimony of Mills.
 
 
 6
 Mills again argues that to the extent the quantity of drugs attributable to him is dependent on the testimony of Hicks, the sentencing judge should have disregarded this testimony because Hicks was not credible. However, that again is a question for the factfinder, and we cannot say on this record that the district court clearly erred in crediting Hicks' testimony during Mills' sentencing hearing.
 
 
 7
 Mills also complains that the district court erroneously enhanced his offense level for possession of firearms based on the presence of two firearms at Hicks' residence. Hicks admitted that the firearms were present in his house as part of a conspiracy to distribute drugs, of which Mills was a part. Hicks also testified that Mills had supplied him with the two pistols for Hicks to use to protect the drugs stored at his house.
 
 
 8
 Section 2D1.1(b)(1) of the Sentencing Guidelines provides, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The relevant Application Note to this section explains:
 
 
 9
 The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet.
 
 
 10
 U.S.S.G Sec. 2D1.1, comment. (n.3). In United States v. Apple, 962 F.2d 335 (4th Cir.1992), defendant was convicted, inter alia, of conspiracy to possess with intent to distribute cocaine, and his sentence was enhanced under Sec. 2D1.1(b)(1) because of the presence of a firearm at his residence, which was where the defendant has arranged for the distribution of drugs. Rejecting defendant's challenge that there was insufficient evidence linking the firearm to the commission of the conspiracy, we held that:
 
 
 11
 [P]ossession of the weapon during the commission of the offense is all that is needed to invoke the enhancement. The sentencing court is not required to find any more of a connection between the possession of the weapon and the commission of the drug offense.... [Defendant] also contends that there must be some geographical and temporal proxim ity between the weapon and the commission of the offense, but it is clear under the Guidelines that when the offense committed is conspiracy, these proximity conditions are met when the weapon is discovered in a place where the conspiracy was carried out or furthered.
 
 
 12
 Id. at 338 (emphasis added).
 
 
 13
 Because fully loaded firearms were present at the site of the drug trafficking conspiracy in this case, we conclude that the district court did not err in finding that it was not "clearly improbable" that the firearms were connected with the conspiracy, and in thereby enhancing Mills' offense level by two points.
 
 
 14
 Mills also challenges the district court's refusal to grant him a two-point reduction in his offense level for playing a minor role in the offense. As the government notes, however, the trial record is replete with evidence that Mills was the principal actor in this conspiracy, in that he set up the operation, supplied the drugs, drug paraphernalia, and firearms to Hicks.
 
 
 15
 Finally, Mills contends that the district court erred in declining to grant him a two-point reduction for acceptance of responsibility. In a letter that Mills' counsel wrote to the probation officer, Mills' counsel stated that Mills had informed his counsel that he acknowledged having been involved in the sale of narcotics with Hicks and Owens for about a year, and that on the night in question, Owens and Mills were going to Hicks' house to acquire some drugs. Further, at his sentencing hearing, Mills conceded that with regard to the sale of cocaine powder by Mills and Hicks, "People would call, and then I would send them to [Hicks]. They already knew Mr. Hicks. They knew what he did." Further, Mills essentially acknowledged that when he sent people to Hicks, it was for the purpose of purchasing cocaine powder. Mills contends that such acknowledgements on his part should suffice to warrant a two-point reduction for acceptance of responsibility.
 
 
 16
 At the sentencing hearing, the district court adopted the findings of the presentence report that Mills did not qualify for any decrease based on acceptance of responsibility because, even though Mills admitted to being involved in the sale of narcotics with Hicks, he did not admit responsibility or guilt with respect to the guns, drugs, or money confiscated in the arrest on August 17, 1993, and therefore he had not accepted responsibility for the substantial part of his role in the drug conspiracy. On the contrary, at his sentencing hearing, Mills generally denied that he was involved in a conspiracy with Hicks to sell drugs, denied that he was aware that there were guns in Hicks' house, claimed he had nothing to do with the drugs on August 17, and claimed he was not involved with selling drugs. Based on this testimony alone, we conclude that the district court did not err in denying Mills a two-point reduction for acceptance of responsibility. See Sec. 3E1.1, comment. (n.1).
 
 III
 
 17
 Mills next challenges his sentence as violative of the equal protection component of the Fifth Amendment's Due Process Clause, on the ground that the sentence he received for dealing in crack cocaine was unconstitutionally harsher than the sentence he would have received had he been dealing solely in like quantities of cocaine powder. We have repeatedly rejected this challenge, see e.g., United States v. Jones, 18 F.3d 1145, 1151 (4th Cir.1994).
 
 IV
 
 18
 Finally, Mills contends that the conduct of his trial counsel, David P. Baugh, during his sentencing hearing constituted ineffective assistance of counsel. During trial, Mills was represented by Baugh, but prior to the sentencing hearing, Baugh sought to withdraw as lead counsel and to remain only as local counsel with William J. Rapp substituting as Mills' lead counsel. At his sentencing hearing, however, both Baugh and Rapp represented Mills. When Rapp asked Mills at the hearing whether there was an agreement between Mills and Hicks to sell crack cocaine and Mills responded in the negative, Baugh interjected, "Excuse me, Your Honor." A discussion with the judge off the record followed and Baugh then announced that Mills had no objection to Baugh's fully withdrawing from representing Mills at that time. Mills, still represented by Rapp, confirmed that he had no objection to Baugh's withdrawal.
 
 
 19
 Mills now objects that the clear inference from these circumstances is that Mills had told Baugh in confidence that indeed he had made some agreement with Hicks to sell crack and that Mills perjured himself with respect to this matter at the sentencing hearing. Mills claims that it was highly prejudicial for Baugh to abandon him at his sentencing hearing, where he was needed to serve as local counsel under the rules governing practice in that district court. Mills contends that many of his sentencing factors were based on the judge's assessment of his credibility, and that the actions of Baugh in responding to Mills' testimony cast doubt on Mills' credibility and significantly prejudiced him. For these reasons, Mills contends that Baugh's performance rendered him ineffective under the standard set forth by Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 20
 While the effectiveness of counsel may in exceptional cases be reviewed on direct appeal where the record is adequately developed, ordinarily we will not consider such an issue on direct appeal. See United States v. Tatum, 943 F.2d 370, 379 (4th Cir.1991). Because the matters relevant to Mills' claims of ineffective counsel are not adequately presented in this record, we cannot review them in this appeal.
 
 
 21
 For the reasons given, the judgment of the district court is
 
 
 22
 AFFIRMED.