**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4828

NANCY MUSIC,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CR-96-661-9-8)

Submitted: May 26, 1998

Decided: September 1, 1998

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

L. J. Rosintoski, Charleston, South Carolina, for Appellant. J. Rene
Josey, United States Attorney, Sean Kittrell, Assistant United States
Attorney, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Nancy Music appeals her sentence imposed after a plea of guilty to conspiracy to traffic in and use unauthorized access devices in order to obtain money, goods, and services in excess of $1000, in violation of 18 U.S.C. § 1209(a)(2) (1994); using or possessing electronic benefit transfer cards (EBT cards) valued in excess of $5000 in violation of 7 U.S.C. Ch. 51 (1994) (the Food Stamp Program); and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I), (a)(1)(B)(I) (1994). Finding no error, we affirm.

Music worked as a check-out clerk at Dobbs Market in Burton, South Carolina, which participated in the Food Stamp Program (FSP). In November 1993, the United States Department of Agriculture (USDA) in conjunction with the United States Secret Service (USSS) began an investigation into Dobbs Market after receiving information that it was engaged in food stamp fraud. Several undercover sales were conducted over the course of several months beginning in June 1993, wherein a confidential informant presented food stamp coupons to a sales clerk at Dobbs Market, and received $.70 on the dollar in cash in return. No food was purchased during these transactions. An agent from the USSS discussed the investigation with an Assistant United States Attorney in March 1994, and the USDA prepared a written report on the results of the investigation which was sent to the United States Attorney's office in Columbia, South Carolina in June 1994.

In August 1995, USSS agents interviewed Eva Gadsen, another clerk at Dobbs Market, who agreed to cooperate with the investigation. Gadsen related that over the past ten years Solon Dobbs, the owner of Dobbs Market, had directed her to purchase food stamp coupons for $.70 on the dollar. On two occasions in the next few months, Gadsen worked undercover and conducted several fraudulent EBT transactions. The Government did not arrange any more undercover sales during this time. However, it obtained statements from witnesses identifying several clerks, including Music, as participants in the fraudulent EBT scheme.

2

On December 12, 1995, search warrants were served on Dobbs Market, resulting in the seizure of ledgers on which sales clerks recorded the fraudulent EBT transactions. These ledgers showed that from January 1994 through November 1995, Dobbs Market redeemed approximately $290,000 in food stamps and EBT transactions. Of that, $145,163.33 was traceable to fraudulent food stamp and EBT transactions.

The presentence investigation report (PSR) recommended that Music's base offense level be set at six under U.S. Sentencing Guidelines Manual § 2F1.1 (1995). The PSR also recommended that, based on the total loss of $145,163.33, Music's base offense level be increased by seven levels under USSG § 2F1.1(b)(1).

During the sentencing hearing in September 1997, Music objected to the PSR's calculation of the loss for purposes of determining the seven level increase under USSG § 2F1.1(b)(1). Music argued that she should not be held responsible for the full $145,163.33 attributable to fraudulent food stamp and EBT transactions over the entire course of the investigation through November 1995. Rather, she argued that she should only be held responsible for the amount of the loss from the period of June 1993, when the first undercover sale was made, to December 1994, when she contends that the Government had sufficient information to prosecute the case. Music contended that because the Government let the criminal activity continue until December 1995, the amount of the loss was higher than it would have been had the Government decided to prosecute earlier, thus increasing her offense level under USSG § 2F1.1(b)(1).

The district court denied the motion, noting that the Government did not encourage the criminal conduct and simply let it continue, and Music could not complain that the Government did not stop her from engaging in criminal conduct. The court set Music's total offense level at thirteen in accordance with the PSR, and sentenced her to twelve months' imprisonment.

On appeal, Music contends that her base offense level was increased because the Government failed to prosecute the case in December 1994 when it had sufficient information to do so. Music contends that the Government's delay in prosecuting resulted in an

3

increased base offense level under § 2F1.1(b)(1) and thus an increased sentence in violation of her due process rights under the Fifth Amendment.

Music's contention is essentially a "sentencing manipulation" argument. See United States v. Jones, 18 F.3d 1145, 1154 (4th Cir. 1994). In Jones, this Court held that even were sentencing manipulation a recognized theory in this court, it was not outrageous government conduct warranting a departure from the guidelines for the Government to continue to buy narcotics from willing sellers even after the level of drugs relevant for sentencing purposes was sold. See Jones, 18 F.3d at 1155; see also United States v. Shepard, 4 F.3d 647, 649 (8th Cir. 1993); United States v. Connell, 960 F.2d 191, 194-96 (1st Cir. 1992). The Government's conduct in this case, simply letting fraudulent transactions continue, does not amount to outrageous conduct resulting in a due process violation. See Jones, 18 F.3d at 1155; Connell, 960 F.2d at 194.*

_____

*Music cites United States v. Lovasco, 431 U.S. 783 (1977), and United States v. Marion, 404 U.S. 307 (1971), in support of her argument that the Government's delay resulted in a due process violation because it worked to increase her base offense level. These cases hold that in order to establish a due process violation resulting from an investigative preindictment delay, a defendant must show that he was actually prejudiced by the delay, and that the government intentionally delayed the indictment for the purpose of gaining a tactical advantage. See Marion, 404 U.S. at 324; Jones v. Angelone, 94 F.3d 900, 905-07 (4th Cir. 1996). These cases do not deal with the effect preindictment delay has on a defendant's sentence. Rather, these cases are concerned with the effect that undue delay may have on a defendant's actual defense at trial, such as the ability to locate witnesses; the cases are inapplicable here. See Lovasco, 431 U.S. at 785, 796; Marion, 404 U.S. at 324; Jones v. Angelone, 94 F.3d at 906-10; United States v. Automated Medical Labs., 770 F.2d 399, 404 (4th Cir. 1985).

Even were the test set out in these cases applicable, because Music fails to show that the Government intentionally delayed prosecuting the case to gain an unfair advantage or for some other bad faith motive, Music fails to show a due process violation. See Jones v. Angelone, 94 F.3d at 905.

4

We affirm Music's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5