UNITED STATES of America, Plaintiff–Appellee,

v.

Latoscha Ronice FISHER, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Frederick Devon FLEMING, a/k/a Frog, Defendant–Appellant.

Nos. 94–5563, 94–5564.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1995.

Decided June 27, 1995.

**ARGUED:** Richard Craig Halton, Greensboro, NC, for appellant Fleming; Paul Marshall James, III, Winston–Salem, NC, for appellant Fisher. David Bernard Smith, Asst. U.S. Atty./Senior Litigation Counsel, Greensboro, NC, for appellee. **ON BRIEF:** E. Raymond Alexander, Jr., Greensboro, NC,

for appellant Fleming. Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before HALL and NIEMEYER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge HALL and Senior Judge PHILLIPS joined.

## OPINION

NIEMEYER, Circuit Judge:

Latoscha Fisher and Frederick Fleming were convicted of conspiracy to possess with intent to distribute "cocaine base" in the Winston–Salem area of North Carolina during the period from late fall 1991 until November 1992, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Additionally, Fleming was convicted of two counts of possession with intent to distribute cocaine base.

The evidence presented by the government showed that Fisher and Fleming were members of a conspiracy headed by Joseph Reddick and consisting of approximately 10 other persons. Reddick periodically brought large quantities of "crack" cocaine from New York to the Winston–Salem area, and five to ten-ounce quantities were typically sold to Fleming on consignment whereby Fleming did not pay for the crack until he had resold it. Often Fleming's transactions, and those of other conspirators, were conducted from Fisher's residence. A conspirator testified to taking a set of scales to Fisher's residence on one occasion and, along with Fisher, cutting two kilograms of crack cocaine into one ounce quantities. The government also introduced as part of the drug conspiracy a 1172–gram shipment of crack cocaine which was being transported to Reddick when it was seized at the Amtrak station in Winston–Salem on April 2, 1992.

Fisher and Fleming were tried jointly and convicted by a jury. Using the specified, heavier penalties imposed for drug violations involving "cocaine base," *see* 21 U.S.C. § 841(b)(1)(A)(iii) and U.S.S.G. § 2D1.1, the district court sentenced Fisher to 235 months imprisonment and Fleming to 360 months imprisonment. On appeal, both defendants contend that "cocaine" and "cocaine base" have the same chemical formula, and because there is an ambiguity in the statute providing different sentences for the two substances, under the rule of lenity they should have been sentenced under the more lenient sentencing provisions involving simply "cocaine." *See* 21 U.S.C. § 841(b)(1)(A)(ii) and U.S.S.G. § 2D1.1. They also raise various other challenges to the conduct of their trial and sentencing. For the reasons that follow, we affirm.

I

Of Fisher and Fleming's various contentions, only their argument that they should have been sentenced under the statute penalizing "cocaine" violations instead of the statute penalizing "cocaine base" violations merits any detailed discussion. Fisher and Fleming contend that they should have been sentenced under 21 U.S.C. § 841(b)(1)(A)(ii) (hereafter "clause (ii)") (penalizing possession and distribution of "cocaine" and "its salts") instead of 21 U.S.C. § 841(b)(1)(A)(iii) (hereafter "clause (iii)") (penalizing possession and distribution of "cocaine base"). Since the statutory 10–year mandatory minimum sentence is imposed under clause (ii) for five kilograms of "cocaine" or "its salts" and under clause (iii) for only 50 grams of "cocaine base," the same penalty is imposed for possession and distribution of a quantity of cocaine base as it is for 100 times that quantity of cocaine powder. Since 2,566 grams of cocaine base were attributed to Fisher and 2,128 grams to Fleming, both were sentenced under clause (iii) addressing the possession and distribution of "cocaine base," and not under clause (ii) penalizing the possession and distribution of "cocaine." A similar distinction between the substances is made under the Sentencing Guidelines. *See* U.S.S.G. § 2D1.1 (assigning, for example, the same base offense level of 38 for either a violation involving 1.5 kilograms of "cocaine base" or a violation involving 150 kilograms of "cocaine").

Fisher and Fleming argue that they should have been sentenced under clause (ii) instead of clause (iii) because cocaine base is pure

cocaine and both pure cocaine and cocaine base have the same chemical formula, C17H21O4N. Cocaine powder, on the other hand, which is cocaine hydrochloride, is a salt of cocaine and has a different chemical formula. Thus, they maintain that when clause (ii) addresses both cocaine and the salts of cocaine, it covers pure cocaine and cocaine hydrochloride. They argue that if Congress intended to cover only cocaine hydrochloride in clause (ii) and cocaine base in clause (iii), it could have limited clause (ii) solely to the salts of cocaine without also including "cocaine."

■ Fisher and Fleming rely principally on the opinion in *United States v. Davis,* 864 F.Supp. 1303 (N.D. Ga.1994), for the proposition that cocaine and cocaine base are the same molecular substance, rendering the distinct penalty provisions meaningless and demanding the application of the rule of lenity. *See id.* at 1308–09. The rule of lenity requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply. *See, e.g., Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

■ If we were to read clause (ii) to include cocaine base because cocaine base is pure cocaine, we would of necessity have to conclude that there was no purpose for including clause (iii) in the statute since that clause also addresses cocaine base. In order to give a rational purpose to clause (iii), we must conclude that the statute's explicit reference in clause (iii) to cocaine base indicates an intent to address separately the trafficking of cocaine base and, because of its more destructive nature, to impose a heavier penalty for violations involving that substance. When interpreting a statute, rules of statutory construction require that we give meaning to all statutory provisions and seek an interpretation that permits us to read them with consistency. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Thus, reading clause (ii) and clause (iii) together, we can only conclude that the purpose of clause (iii) is to carve out a heavier penalty for the particularly harmful form of cocaine known as "cocaine base" or "crack." And, if clause (iii) isolates crack cocaine for special treatment, it is illogical then to read clause (ii) also to include crack cocaine. Thus, the only rational interpretation that we can give this statute as a whole is to conclude that clause (ii) addresses cocaine powder and the other forms of cocaine identified therein, except for "crack" cocaine which is expressly separately addressed in clause (iii). *See generally United States v. Katz,* 271 U.S. 354, 362, 46 S.Ct. 513, 516, 70 L.Ed. 986 (1926).

While the rule of lenity requires courts to impose the lesser of two penalties in the face of unresolvable ambiguity, "[t]his in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) (Frankfurter, J.). We believe that a common sense reading of 21 U.S.C. § 841(b)(1)(A) eliminates the ambiguity which Fisher and Fleming contend exists and yields the interpretation we have advanced.

Even though we have no difficulty in interpreting the statute on its face in the manner indicated, we are comforted by the recognition that our interpretation is confirmed by the legislative history of the statute. This legislative history demonstrates that Congress intended, with the enactment of clause (iii), to penalize more severely violations involving crack cocaine. *See* 132 Cong.Rec. S14,288 (daily ed. September 30, 1986) (one purpose of Narcotics Penalties and Enforcement Act of 1986 was to recognize crack as a distinct and separate drug from cocaine hydrochloride).

■ Fisher and Fleming also contend that the 100 to 1 statutory sentencing ratio for cocaine and cocaine base in 21 U.S.C. § 841 and the corresponding sentencing guidelines denies them equal protection in violation of the Due Process Clause of the Fifth Amendment. This contention, however, is without merit. We have addressed this issue before and have repeatedly affirmed the constitu-

tionality of the sentencing ratio for cocaine and cocaine base against such equal protection and due process challenges. *See, e.g., United States v. Jones,* 18 F.3d 1145, 1151 (4th Cir.1994); *United States v. D'Anjou,* 16 F.3d 604, 612 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2754, 129 L.Ed.2d 871 (1994); *United States v. Bynum,* 3 F.3d 769, 774 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1105, 127 L.Ed.2d 416 (1994).

## II

Fisher and Fleming's other contentions merit merely a brief discussion.

 Fisher argues that the government failed to produce exculpatory *Brady* material involving the drug treatment records of certain witnesses who testified against her at trial, which she had requested to prove that the witnesses were drug users and therefore incredible. After an *in camera* review of the materials requested, the district court refused to admit the records and Fisher failed to pursue the matter further below, noting no objection to the court's ruling. Thus, reviewing this issue now for plain error, *see* Fed. R.Crim.P. 52(b), we conclude that even if we were to disagree with the district court's decision denying access to these materials, their admission into evidence could only have marginally strengthened her impeachment efforts in cross-examining these witnesses, since evidence was already admitted which demonstrated that the witnesses were drug users. In these circumstances, Fisher has failed to demonstrate plain error. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (plain error under Rule 52(b) must both be "plain" and affect "substantial rights").

 Fisher also argues that the evidence was insufficient to implicate her in the conspiracy and, in particular, was not sufficient to establish that she was a member of the conspiracy when 1,172 grams destined for Reddick were seized at the Amtrak station in April 1992. Because of the absence of such evidence, she also argues that it was error for the district court to have instructed the jury on conspiracy law under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90

L.Ed. 1489 (1946). Contrary to Fisher's contentions, however, the record amply establishes her participation as a conspirator, including during the period when the 1,172 grams were intercepted. Even though Fisher was not directly implicated in the 1,172–gram shipment, there was ample evidence to connect her with the conspiracy both before and after that delivery. Her residence had been used repeatedly as a distribution point, and she actually participated in allocating cocaine for further distribution and sale. Moreover, there is no evidence that at any time Fisher withdrew, or manifested an intent to withdraw, from the conspiracy to isolate herself from the foreseeable acts of the conspiracy. *See United States v. Walker,* 796 F.2d 43, 49 (4th Cir.1986) (conspirators are deemed to continue as members of a conspiracy absent affirmative evidence of termination of or withdrawal from the conspiracy).

 Finally, Fisher challenges the amount of crack cocaine imputed to her for purposes of sentencing. She argues that the testimony of William Commodore, a co-conspirator, attributing two kilograms of crack cocaine to her was unreliable. He testified that on one occasion he took a set of scales and two kilograms of crack cocaine to Fisher's apartment, where he and Fisher cut the two kilograms into one ounce quantities. Issues involving the quantity of drugs properly attributable to a defendant are typically questions of fact for resolution by the district court, and we will overturn the district court's determinations only if they are clearly erroneous. *See United States v. Vinson,* 886 F.2d 740, 742 (4th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). Similarly, the credibility of a testifying co-conspirator is for the sentencing judge to assess. *See United States v. Choate,* 12 F.3d 1318, 1321 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). We conclude that, in sentencing Fisher, the district court had sufficient evidence on which to rely to justify the quantities it imputed to her.

In short, we find no merit to Fisher or Fleming's contentions on appeal and there-

fore affirm the judgments of the district court.

*AFFIRMED.*