**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4201

RAMON ACOSTA, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., District Judge.
(CR-95-247)

Submitted: April 17, 1997

Decided: May 1, 1997

Before NIEMEYER and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David B. Freedman, WHITE & CRUMPLER, Winston-Salem, North
Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney,
Timika Shafeek, Assistant United States Attorney, Greensboro, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ramon Acosta, Jr. was found guilty by jury of possession with intent to distribute "cocaine base `crack,'" in violation of 21 U.S.C. § 841(a)(1) (1994). On appeal, Acosta alleges that: (1) the district court erred by denying his motion to suppress approximately one kilogram of crack cocaine found in his suitcase; (2) the district court sentenced him for possession of crack cocaine without competent evidence of the cocaine's precise chemical formula; and (3) his sentence for crack cocaine is unconstitutional because the punishment for crack cocaine is significantly harsher than for powder cocaine. For the reasons that follow, we affirm.

The district court held a hearing on Acosta's motion to suppress. The following facts were uncontested. As Acosta walked from his train at an Amtrak station across a parking lot and toward a van, two plain clothes officers approached him and identified themselves. After Acosta agreed to speak with the officers, they learned he was traveling from New York and verified that information by checking Acosta's train ticket. One officer then told Acosta they were looking for guns and drugs and asked if he could search his bags. Acosta responded, "I understand; go ahead," and handed his bags to the officers. As the officer was untying a knot on the second bag, Acosta offered to untie the knot. Because the knot had begun to loosen and because the officer was concerned for his own safety the officer replied, "No, I've got it." The second bag contained over one kilogram of crack cocaine.

Courts look to the totality of the circumstances to determine whether consent to a warrantless search was voluntary. See United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). Courts "consider the characteristics of the accused (such as age, maturity, education, intel-

2

ligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." Lattimore, 87 F.3d at 650. Because "the voluntariness of consent to search is a factual question, we must affirm the determination of the district court unless its finding is clearly erroneous." Id. We find no error in the district's determination. Acosta was approached by two plain clothes officers in a public area, answered a few questions, and then offered his bags in response to their request for a search. The detention was brief, no weapons were visible, and the officers did not make physical contact with him, threaten or otherwise intimidate him.[1] Thus, we do not find the district court clearly erred by denying his motion to suppress.

Acosta's claims regarding his sentence for crack cocaine also fail. First, Acosta was indicted for and convicted of possession with intent to distribute "cocaine base crack." At trial Acosta stipulated to the fact that the Government's "qualified forensic chemist" concluded that the substance found in his bag was "a white rock substance that was determined to be 1.029 kilograms net weight of cocaine base crack." His claim for the first time on appeal that the substance was not crack is simply without merit. Accordingly, we do not find that the district court committed plain error by sentencing Acosta under the crack cocaine guidelines.[2] See United States v. Olano, 507 U.S. 725, 734 (1993) (claim raised for the first time on appeal cannot justify reversal unless the error is "clear under current law"). Second, this court has consistently upheld the greatly enhanced penalties for crack cocaine. See United States v. Burgos, 94 F.3d 849, 876-77 (4th Cir. 1996) (en banc) (court refused to reconsider equal protection attack on disparity of punishment between cocaine powder and cocaine base because Congress specifically rejected the Sentencing Commission's proposed

_____

[1] Although the record of the hearing on the suppression motion does not reveal Acosta's age, experience, intelligence and maturity, Acosta does not allege on appeal that the district erred by failing to make these factual findings.

[2] The sentencing guidelines specifically state that the Sentencing Commission used the term "cocaine base" to refer to "crack." United States Sentencing Commission, Guidelines Manual,§ 2D1.1(c), note (D) (Nov. 1995).

3

amendment to reduce the disparity); <u>United States v. Fisher</u>, 58 F.3d 96, 99-100 (4th Cir.), <u>cert. denied</u>, #6D 6D6D# U.S. ___, 64 U.S.L.W. 3270 (U.S. Oct. 10, 1995) (No. 95-5923) (rejecting litigant's equal protection argument with regard to the 100-to-1 sentencing ratio between crack and powder cocaine); <u>United States v. D'Anjou</u>, 16 F.3d 604, 612 (4th Cir. 1994) (holding that sentencing guidelines equating one unit of cocaine base with 100 units of cocaine powder did not violate equal protection based on racial disparity). Thus, we affirm Acosta's conviction and sentence.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4