**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ALBERT BETEMIT, a/k/a Juan Lopez,
a/k/a Jose Ivan Torres, a/k/a Jose
Frias,
Defendant-Appellant.

No. 96-4755

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-95-64)

Argued: October 1, 1997

Decided: November 12, 1997

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
MAGILL, Senior Circuit Judge for the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan and Senior Judge Magill joined.

_____

**COUNSEL**

**ARGUED:** Sa'ad El-Amin, EL-AMIN & CRAWFORD, Richmond,
Virginia, for Appellant. Patrice Marie Mulkern, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Helen F. Fahey, United States Attorney, N. George Metcalf, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

Albert Betemit was the organizer and leader of a large crack cocaine and cocaine powder distribution network, involving at least ten co-conspirators, that operated in Virginia and South Carolina. Members of the conspiracy transported cocaine from New York to Virginia and South Carolina, "cooked" it into crack, and sold both crack cocaine and powdered cocaine on the street. The government offered evidence that during the period from 1987 to 1993 the conspiracy was involved in the distribution of over 314 kilograms of cocaine in crack and powder form.

Following a jury trial, Betemit was convicted on multiple counts of conspiracy, distribution, and possession of crack cocaine and cocaine powder, two counts of carrying a firearm during the commission of a drug trafficking crime, and one count of unlawful use of a communication facility. The district court subsequently dismissed the firearm convictions. The court sentenced Betemit to life imprisonment.

On appeal, Betemit contends (1) that certain non-testifying co-defendants' statements were introduced in violation of Bruton v. United States, 391 U.S. 123 (1968); (2) that the grand jury testimony of unindicted co-conspirator LaMorris Ellis was admitted in violation of the Confrontation Clause of the Sixth Amendment; and (3) that the evidence was insufficient, both as to amount and as to the nature of the cocaine, to support a sentence based on 1.5 kilograms of crack cocaine. Finding no merit to these claims, we affirm.

2

I

Betemit contends that certain co-defendants' statements were introduced at trial in violation of <u>Bruton v. United States</u>, 391 U.S. 123 (1968). In <u>Bruton</u>, the Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when the incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the trial court instructs the jury to consider the confession only against the co-defendant.

During Betemit's trial, the following statements were made by Betemit's non-testifying co-defendants in the presence of the jury:

> 1. Bedford Forte, an unindicted co-conspirator, testified on direct examination by the government that "Janet [Hewlett, a co-defendant] had told me that Albert[Betemit] had left a gun in the apartment, and she wasn't really particular about guns. And he wasn't there as much as he had been coming through the house. So I said, well, give me the gun. I'll get rid of it. I can use the money." After a bench conference at which Betemit's counsel raised a <u>Bruton</u> objection, the district judge directed the jury "to forget" and "disregard" the testimony. The court denied Betemit's motion for a mistrial.

> 2. Carolyn Forte, another unindicted co-conspirator, testified on direct examination by the government,"I was present at a conversation that [Janet Hewlett] had with Chip about a gun that she purchased for Albert [Betemit]." The judge directed the jury to "disregard the entire question and entire answer."

> 3. Cammy Lowery, also an unindicted co-conspirator, testified on cross-examination by co-defendant's counsel that "she [Shenita Banks, a co-defendant] said that Al [Betemit] gave [a car] to her to use" and that Banks "told me that she got [a large amount of money] from Al[Betemit], that he gave her the money." The judge directed the jury to "just disregard the question and the answer."

3

We agree with Betemit that where a non-testifying co-defendant's statement implicates a defendant, a limiting instruction by the court does not provide an adequate substitute for confrontation and cross-examination. See Bruton, 391 U.S. at 137. But a "Bruton problem exists only to the extent that the codefendant's statement in question, on its face, implicates the defendant." United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994) (emphasis added). In this case, once the district court dismissed the gun charges against Betemit, the three statements are, at best, only inferentially incriminating in that they deal generally with guns, cars, and money. They do not, however, actually address the buying or selling of illegal drugs. Accordingly, we conclude that the statements cannot "fairly be understood to incriminate" Betemit and therefore do not violate the principles of Bruton. Locklear, 24 F.3d at 646; see also United States v. Brooks, 957 F.2d 1138, 1146 (4th Cir. 1992) (Bruton applies only where non-testifying co-defendant's statement is "facially incriminating" (emphasis added)).

II

Betemit also contends that the admission of LaMorris Ellis' grand jury testimony under the residual hearsay exception of Federal Rule of Evidence 804(b)(5) violated his Sixth Amendment right of con-frontation. Ellis was an unindicted co-conspirator who agreed to cooperate with the government and who had testified before a federal grand jury regarding the details of Betemit's cocaine distribution operation. Prior to Betemit's trial, the government issued a subpoena for Ellis to appear as a witness. Ellis, however, had disappeared and, despite the government's reasonable efforts, could not be found. Con-sequently, the government moved to admit Ellis' grand jury testimony under Federal Rule of Evidence 804(b)(5). Based on its finding that the testimony possessed sufficient indicia of reliability, the district court permitted the introduction of redacted portions of the testimony.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the wit-nesses against him." Despite its absolute language, the Confrontation Clause "permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." Maryland v. Craig, 497 U.S. 836, 847-

4

48 (1990). Under the two-part test articulated by the Supreme Court in <u>Ohio v. Roberts</u>, 448 U.S. 56, 65-66 (1980), before a declarant's hearsay testimony may be admitted, the Confrontation Clause requires the government to show (1) that the use of the hearsay is necessary because the declarant is unavailable, and (2) that the hearsay bears sufficient "indicia of reliability" to enable the factfinder to evaluate the truth of the hearsay. <u>See United States v. McHan</u>, 101 F.3d 1027, 1036-37 (4th Cir. 1996). For hearsay statements to be admitted under Rule 804(b)(5), a showing of "particularized guarantees" of their trustworthiness must be made. <u>Roberts</u>, 448 U.S. at 66; <u>McHan</u>, 101 F.3d at 1036-37. There is no "mechanical test" for determining whether a hearsay statement possesses sufficient guarantees of trustworthiness. <u>Idaho v. Wright</u>, 497 U.S. 804, 822 (1990). Rather, such a determination is to be made "from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." <u>Id</u>. at 820. Evidence extrinsic to the making of the hearsay statement itself, however, may not be relied upon to provide a guarantee of trustworthiness. <u>Roberts</u>, 448 U.S. at 822.

Beginning with the first part of the <u>Roberts</u> test, the district court in this case found that Ellis was unavailable and that the government had made reasonable efforts to locate him before trial. These findings were not clearly erroneous. <u>See United States v. Thomas</u>, 705 F.2d 709, 712 (4th Cir. 1983) (holding that government had made reasonable efforts to locate witnesses where government had maintained contact with witnesses following their grand jury testimony, had no indication witnesses would disappear, and had attempted to locate witnesses by service of process before trial). And on the second part of the test, we believe that there were numerous guarantees to assure the trustworthiness of Ellis' statements. First, the statements were part of Ellis' testimony voluntarily given under oath in the solemn context of a grand jury proceeding. Second, an official transcript of his testimony was made. Third, Ellis had received a grant of immunity for giving truthful testimony. Fourth, Ellis' testimony was based on his personal knowledge. Fifth, there was temporal proximity between Ellis' testimony and the events it described. And sixth, the testimony was developed without excessive reliance on leading questions. <u>See McHan</u>, 101 F.3d at 1038 (identifying factors supporting a finding of trustworthiness under <u>Roberts</u>); <u>United States v. Shaw</u>, 69 F.3d 1249,

5

1254 (4th Cir. 1995) (same). Even though the district court also referred, improperly, to the fact that extrinsic evidence corroborated Ellis' testimony, doing so was harmless in light of the various other factors supporting a finding of trustworthiness.

Betemit contends nonetheless that in this case Ellis recanted his grand jury testimony during a telephone call that he made from an unknown location to detective David Miller sometime near the end of Betemit's trial. The district court, after questioning the detective out of the presence of the jury concerning the contents of this conversation, concluded that the terms of Ellis' recantation, if any, were unclear, and its circumstances were suspect. Accordingly, the court did not find that the telephone call undermined the reliability of Ellis' prior grand jury testimony, and we cannot say that the court's findings were clearly erroneous.

III

Finally, Betemit contends that the district court erred in concluding, for sentencing purposes under U.S.S.G. § 2D1.1, that 1.5 kilograms of crack cocaine were involved and that the "crack" referred to by various witnesses was in fact crack cocaine.

During Betemit's sentencing hearing, the district court found that the quantity of powder and crack cocaine involved in the conspiracy was "enormous" and that the amount of crack well exceeded 1.5 kilograms, the minimum amount required to impose the maximum penalties under the Sentencing Guidelines. The government had presented evidence that the conspiracy had distributed in total over 314 kilograms of cocaine powder and crack, including 26-52 kilograms of crack in 1990, 26-156 kilograms of crack in 1991, and 981.6 grams of crack in 1993. Moreover, in response to the government's evidence, Betemit conceded that "if the Court believes the testimony of the witnesses identified by the government by a preponderance of the evidence, then there was in excess of 1.5 kilograms of crack cocaine possessed and distributed during the entire period of the conspiracy."

The government has the burden of proving by a preponderance of the evidence sentencing factors, including the type and quantity of drugs for which the defendant should be held accountable. See United

States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1993). In proving these factors, the government may rely upon information found in the Presentence Report unless the defendant affirmatively shows that the information found there is inaccurate or unreliable. See United States v. Gilliam, 987 F.2d 1009, 1114 (4th Cir. 1993). A "mere objection" to the Presentence Report's findings "is not sufficient" to challenge a Presentence Report. United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). When, however, the defendant effectively puts a finding of the Presentence Report into dispute, the district court is required to make an independent determination on the issue. Estrada, 442 F.3d at 231; U.S.S.G. § 6A1.3. In making this determination, the district court may assess the credibility of witnesses. United States v. Fisher, 58 F.3d 96, 100 (4th Cir. 1995). We review the district court's findings on sentencing factors for clear error. Id .

In this case, the district court clearly credited the testimony of witnesses and government agents that referred to the involvement of large amounts of crack cocaine, many times in excess of the 1.5 kilogram threshold for maximum sentencing. We cannot conclude, on this record, that the district court's findings were clearly erroneous, particularly when Betemit concedes that he can succeed in his challenge as to the amount of crack involved only if we were to find the government's witnesses incredible.

Betemit contends additionally that even if the court believed the witnesses who testified to distributing more than 1.5 kilograms of crack cocaine, the government failed to introduce sufficient evidence to confirm that the crack to which they were referring was in fact crack cocaine. Betemit contends that under the definition of "crack" supplied by the Sentencing Guidelines, the government was required to present evidence that the drugs had been processed using sodium bicarbonate and had appeared in a lumpy, rocklike form. See U.S.S.G. § 2D1.1 Note (D).

While Betemit is correct in noting that there was no testimony that the specific crack cocaine to which the witnesses referred was processed by combining cocaine hydrochloride and sodium bicarbonate and that the product appeared "in a lumpy, rocklike form," there is ample testimony from numerous witnesses that the substance being sold and distributed by Betemit's co-conspirators was "crack." More-

7

over, a kilogram of crack cocaine seized by the government was subjected to laboratory analysis and identified as"cocaine base," which we have held refers to crack cocaine. See Fisher , 58 F.3d at 99. We conclude that any additional chemical analysis of the sort Betemit proposes is not required and that the district court had sufficient evidence to conclude that the drug which various witnesses called "crack" was in fact crack cocaine, particularly when there was evidence that powder cocaine had been transported from New York to Virginia, cooked into crack cocaine, and sold as crack on the street.

In summary, we can find no clear error in the district court's findings that Betemit was responsible for at least 1.5 kilograms of crack cocaine, the minimum amount needed to impose the maximum statutory penalty.

For the foregoing reasons, we affirm Betemit's conviction and sentence.

AFFIRMED