UNITED STATES of America

v.

Ronald B. FORD, Defendant.

Crim. Action No. 94–00074(SS).

United States District Court,
District of Columbia.

March 2, 1998.

Beverly Gay Dyer, Federal Public Defender for D.C., Mark J. Rochon, Kohlman, Rochon & Roberts, Washington, DC, for Ronald B. Ford.

Paul Kevin Carwile, U.S. Department of Justice, Washington, DC, for U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant's Amended Motion To Vacate, Set Aside, or Correct Sentence. On March 3, 1994, Defendant pled guilty to the distribution of 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii)(1997). This Court, on October 19, 1994, sentenced Defendant to a term of imprisonment of 135 months and a term of five years supervised release.

Pursuant to 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess `with the intent to manufacture distribute or dispense, a controlled substance ...." 21 U.S.C. § 841(a)(1)(1997). A controlled substance is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V ...." 21 U.S.C. § 802(6)(1997).

Defendant claims that because cocaine base, one version of which is commonly referred to as "crack," is not specifically listed in any of the schedules of controlled substances in 21 U.S.C. § 812, it is not a controlled substance, and consequently it was not illegal for him to distribute the substance. Defendant further contends that if the distribution of the substance was not illegal, it was inappropriate to sentence him according to the Anti–Drug Abuse Act of 1986, 21 U.S.C. § 801 et. seq., which provides for enhanced penalties for the possession or

distribution of cocaine base. Consequently, Defendant moves to have this Court vacate, set aside, or correct his sentence.

■ Despite Defendant's semantic argument, this Court finds that cocaine base, even if not specifically listed, is nonetheless contained in the broadly defined schedules. Cocaine-related controlled substances are described in Schedule II as:

> [c]oca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocanized coca leaves or extraction of coca leaves, which extractions do not include cocaine or ecgonine.

21 U.S.C. § 812(b)(1997). Cocaine base clearly fits within this general definition of a controlled substance.

According to the definition in Schedule II, a substance is controlled if it is "chemically equivalent or identical with any of these [coca leaves and any salt, compound, derivative, or preparation of coca leaves] substances." 21 U.S.C. § 812(b)(1997). Cocaine base satisfies this definition because "freebase cocaine, ha[s] the same chemical formula as cocaine: $C_{17}H_{21}NO_4$." *United States v. Booker*, 70 F.3d 488, 491 (7th Cir.1995). Cocaine base is a derivative or product of coca leaves. As such, it is a controlled substance according to the definition in the schedule. To make cocaine hydrochloride, otherwise known as powder cocaine, coca leaves are converted into paste "by mixing the leaves with alkaline material (e.g., sodium bicarbonate), an organic solvent (e.g., kerosene), and water." *Id.* at 490 (footnotes omitted). The paste is then mixed with hydrochloric acid and water. *See id.* at 491. The mixture of a base (cocaine) and an acid (hydrochloride) results in a salt (powder) called cocaine hydrochloride. *See id.* Cocaine base in the form of crack cocaine is produced by dissolving cocaine hydrochloride and baking soda in water. *See id.* The mixture is then boiled until only a solid substance is left, and the mass is left to dry. *See id.* No matter what form the cocaine ultimately takes, cocaine base is derived from coca leaves. As such, it is included as a controlled substance under 21 U.S.C. § 812 (1997).

In the alternative, Defendant argues that this Court should vacate, set aside, or correct his sentence because the statute under which he was sentenced is ambiguous as to the penalty for a violation involving cocaine base. Section 841(b)(1)(A)(ii) provides that for a violation involving "5 kilograms or more of a mixture or substance containing" a substance derived from coca leaves, a person "shall be sentenced to a term of imprisonment which may not be less than ten years or more than life ...." 21 U.S.C. § 841(b)(1)(A)(ii). However, § 841(b)(1)(A)(iii) prescribes the same penalty for a violation involving 50 grams or more of cocaine base, a significantly lesser amount than the 5 kilograms or more required under § 841(b)(1)(A)(ii).

Defendant contends that if both § 841(b)(1)(A)(ii) and § 812 define cocaine-related substances as derivatives of coca leaves, as they both do, and if this Court determines that cocaine base is included in the definition in § 812, as it has, then cocaine base must be encompassed in the definition of the substances to which § 841(b)(1)(A)(ii) applies. Defendant further contends that this causes ambiguity in the statute because clause (ii) and clause (iii) both appear to apply to offenses involving cocaine base. Yet, the amounts that trigger the 10 year minimum sentence differ, one clause requires 5 kilograms and the other requires 50 grams. In light of the conflict, Defendant argues that the rule of lenity should apply, requiring the Court, in the face of this ambiguity, to impose the lesser of two penalties. In this case, Defendant argues that he should be sentenced as if he committed a violation involving 50 or more grams of a cocaine-related substance other than cocaine base.

■ When construing a statute, "rules of statutory construction require [the court to] ... give meaning to all statutory provisions and seek an interpretation that permits [it] ... to read them with consistency." *United States v. Fisher*, 58 F.3d 96, 99 (4th Cir.1995) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). To reach such an inter-

pretation, "[t]he court must consider not just the language of the sentencing regime, but also its 'structure, legislative history, and motivating policies ....'" *United States v. Sloan,* 97 F.3d 1378, 1382 (11th Cir.1996) (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205(1980)).

 The Court finds that there is no ambiguity in the statute because § 841(b)(1)(A)(ii) addresses cocaine-related substances other than cocaine base, while § 841(b)(1)(A)(iii) addresses cocaine base substances. With respect to the structure of the statute, the court of appeals held in *United States v. Fisher,* 58 F.3d 96, 99 (4th Cir.1995), that:

> [when] reading clause (ii) and clause (iii) together, [the court] ... can only conclude that the purpose of clause (iii) is to carve out a heavier penalty for the particularly harmful form of cocaine known as "cocaine base" or "crack." And, if clause (iii) isolates crack cocaine for special treatment, it is illogical then to read clause (ii) also to include crack cocaine. Thus, the only rational interpretation that [the court] ... can give this statute as a whole is to conclude that clause (ii) addresses cocaine powder and the other forms of cocaine identified therein, except for "crack" cocaine which is expressly separately addressed.

Additionally, the legislative history and motivating policies of the statute support reading § 841(b)(1)(A)(ii) as applying to cocaine-related substances other than cocaine base and § 841(b)(1)(A)(iii) as applying only to cocaine base substances. The Anti–Drug Abuse Act of 1986 ("ADAA") created the two tiers of penalties for violations involving cocaine-related controlled substances. Legislators made it clear that the ADAA was passed to enhance the penalties for cocaine base, primarily in the form of crack cocaine. See, e.g., 132 Cong. Rec. S14270–01 (Sept. 30, 1986) (statement of Sen. Reigle) (the act "updates the Controlled Substances Act to include new and devastating drugs like 'crack'...."); 132 Cong. Rec. S13741–01 (Sept. 26, 1986) (statement of Sen. Chiles) ("We have enhanced the penalties for drugs, but especially crack cocaine."). Based on the

intent expressed by the legislators it is clear that § 841(b)(1)(A)(iii) was created to enhance the penalties for those who traffic in cocaine base or crack cocaine. *See United States v. Jackson,* 84 F.3d 1154, 1160 (9th Cir.1996); *See also, United States v. Sloan,* 97 F.3d 1378, 1382–83 (11th Cir.1996), *U.S. v. Booker,* 70 F.3d 488, 492–93 (7th Cir.1995), *United States v. Fisher,* 58 F.3d 96, 99–100 (4th Cir.1995).

Section 812 was designed as an all-encompassing description of every type of cocaine-related substance, both present and future. Unlike § 812, clauses (ii) and (iii) of § 841(b)(1)(A) do not set forth a broad description of which cocaine-related substances are illegal. Rather, these clauses specify punishments for various types of cocaine-related substances contained under the umbrella definition in § 812. There is no inconsistency between the distinction made by clauses (ii) and (iii) and the broad definition established by § 812. It is clear that clause (ii) was designed to apply to cocaine-related substances other than cocaine base substances and that clause (iii) was designed to apply to cocaine base substances.