UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

EDWARD GALLARZA,

*Defendant-Appellant.*

No. 02-4758

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Samuel G. Wilson, Chief District Judge.
(CR-01-58)

Submitted: November 26, 2003

Decided: January 7, 2004

Before WILLIAMS, GREGORY, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

Keith E. Golden, KRUPMAN, GOLDEN, MEIZLISH, MARKS & WITTENBERG, L.L.P., Columbus, Ohio, for Appellant. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Edward Gallarza was convicted by a jury of conspiracy to possess with intent to distribute more than fifty grams of crack cocaine, in violation of 21 U.S.C. § 846 (2000), and sentenced to 324 months imprisonment. Gallarza appeals, claiming that the evidence was insufficient to support his conviction, and that the district court erred at sentencing when determining the amount of drugs attributable to him and by increasing his offense level for his role in the offense. For the reasons that follow, we affirm.

The evidence, when viewed in the light most favorable to the government, *see United States v. Burgos*, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), established the following. In the Spring of 1999, the RUSH Drug Task Force, comprised of the Harrisonburg Police Department, Rockingham County Sheriff's Department, the Virginia State Police, and the United States Drug Enforcement Agency, uncovered a large cocaine trafficking conspiracy operating in Harrisonburg, Virginia. The conspiracy consisted of three connected drug organizations and involved transportation of large quantities of cocaine powder from New York City to Virginia, where the cocaine would be cooked into crack cocaine. Gallarza was considered a mid-level dealer, acting as driver and translator for Jonathan Jimenez, a leader of one of the three organizations. Nelson Guerrero, one of the thirteen indicted co-conspirators, testified that he supplied Gallarza with approximately 400 grams of crack cocaine to sell over the course of two months in 1999. Louis Porter testified that he met Gallarza through Carlos Perez ("Shorty"), who operated as a supervisor of several mid-level distributors, including Gallarza. According to Porter, Gallarza traveled to New York to pick up cocaine "at least once every two weeks."

Pedro Guerrero, a street dealer, testified that he, along with Gallarza and two others, would receive one-half to one-kilo quantities of powder cocaine which was cooked into crack by Louis Matos, and given to Guerrero, Gallarza, and the other distributors to sell in Harrisonburg. Guerrero stated that the group would sell 500 grams of crack in less than a week.

Louis Matos testified that he met Gallarza in 1998 and that he, along with Gallarza, transported 400 grams of cocaine from New York to Harrisonburg each week for approximately two to three years. The powder was cooked into crack—by Matos usually—and sold by Gallarza and a number of other dealers. Matos stated that, on one occasion, he saw Gallarza with 400 grams of crack cocaine.

Nathaniel McDaniel testified that Shorty would stay at his house when he (Shorty) was in town and would sell crack cocaine from McDaniel's house. McDaniel witnessed Shorty give Gallarza $3000 to $4000 to go to New York and purchase cocaine. According to McDaniel, Gallarza returned with three or four balls of crack cocaine the size of baseballs, which Gallarza and Shorty cut up for sale. McDaniel testified that Gallarza sold crack and powder cocaine on a daily basis. Finally, Sergeant Chris Rush of the Harrisonburg Police Department testified that on June 19, 1999, he arrested Gallarza for possession with intent to distribute approximately fourteen grams of crack cocaine. Gallarza told Rush that he obtained the cocaine from Shorty and that he had been buying approximately fifteen grams of crack cocaine on a weekly basis from Shorty for the last three months.

At sentencing, the district court attributed 1.6 kilograms of crack cocaine to Gallarza, resulting in a base offense level of 38. The court also gave Gallarza a two-level enhancement for his role in the offense, pursuant to *U.S. Sentencing Guidelines Manual* § 3B1.1(c) (2000). Based on a total offense level of 40 and a criminal history category of II, the applicable guideline range was 324 to 405 months imprisonment. The court sentenced Gallarza to 324 months. He noted a timely appeal.

Gallarza first claims that the district court erred in denying his motion for judgment of acquittal, Fed. R. Crim. P. 29, because the evidence presented at trial was insufficient to prove that he participated in a conspiracy. This court reviews the denial of a motion for acquittal under a sufficiency of evidence standard. *See* Fed. R. Crim. P. 29; *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998). We have reviewed the record and find that the evidence was sufficient to support the jury's verdict. Accordingly, the district court did not err in denying Gallarza's Rule 29 motion.

Next, Gallarza challenges the district court's finding that he was responsible for 1.6 kilograms of crack cocaine. This court reviews the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). The district court adopted the quantity of crack attributable to Gallarza in the presentence report based on the testimony at his trial. Gallarza argues that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he should have only been held accountable for the fifty grams of crack cocaine alleged in the indictment and that, in any event, the district court's findings were based on unreliable testimony of alleged co-conspirators. As to Gallarza's first argument, a particular sentence does not implicate the rule announced in *Apprendi* "'unless it exceeds a default statutory maximum.'" *United States v. Johnson*, 335 F.3d 589, 591 (7th Cir.) (quoting *United States v. Knox*, 301 F.3d 616, 620 (7th Cir. 2002)), *cert. denied*, ___ S. Ct. ___, 2003 WL 22303874 (2003). Because Gallarza's sentence was less than the statutory maximum penalty for fifty grams (life imprisonment), the district court did not err by attributing more crack cocaine to him than was specified in the indictment. As to Gallarza's second argument challenging the district court's reliance on the testimony of alleged co-conspirators, credibility determinations are within the province of the sentencing court and will not be disturbed unless clearly erroneous. *See United States v. Fisher*, 58 F.3d 96, 100 (4th Cir. 1995); *United States v. Choate*, 12 F.3d 1318, 1321 (4th Cir. 1993). Gallarza has not shown that the district court clearly erred by relying on the testimony at issue.

Finally, Gallarza claims that the district court clearly erred by increasing his offense level by two levels for being a manager or leader in the conspiracy. A district court's determination of the defendant's role in the offense is reviewed for clear error. *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002).

The presentence report recommended the two-level adjustment based, in part, on Gallarza's assistance in the transportation of the drugs from New York to Virginia and his involvement in the pre-sale processing of the cocaine. The district court concluded that the adjustment was supported by the evidence that Gallarza "played an essential role in transporting the cocaine from New York to Virginia, and that at least as far as that activity was involved or concerned, he could

accurately be characterized as a manager of criminal activity." Although Gallarza argues that there was no evidence that he supervised or managed any other participants in the conspiracy, Pedro Guerrero testified that he met Gallarza in 1998 and that Gallarza "was showing me the ropes and he was telling me that I could make money. And he was the driver and he also knows English also, so they [used] him . . . for English also." J.A.-1 at 82. We find, based on this evidence, that the district court did not clearly err in enhancing Gallarza's sentence for his role in the conspiracy.

Based on the foregoing, we affirm Gallarza's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*