**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

RAUL CASTILLO RAMOS,
          *Defendant-Appellant.*

No. 05-4187

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-04-293)

Argued: March 17, 2006

Decided: September 5, 2006

Before WIDENER and TRAXLER, Circuit Judges,
and Cameron McGowan CURRIE, United States District Judge for
the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Traxler and Judge Currie concurred.

## COUNSEL

**ARGUED:** Anthony Douglas Martin, Greenbelt, Maryland, for
Appellant. Michael R. Pauze, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Mary-
land, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States
Attorney, Greenbelt, Maryland, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

The defendant, Raul Castillo Ramos, after a nearly year-long investigation, was convicted in the distribution of crack cocaine as well as firearms offenses. He now appeals his convictions. Finding no error, we affirm. We contribute to the ongoing discussion among the circuits regarding the definition of "cocaine base" under 21 U.S.C. § 841.

I.

The government initially learned of and began to target the defendant, Raul Ramos, through an informant known by his code name "Smokey." Smokey was paid by the government from time to time for his services, apparently on a fairly regular basis. Smokey contacted Ramos and, between April 2003 to February 2004, repeatedly purchased crack cocaine from the defendant.

After a number of drug purchases from Ramos, Smokey's case agent, Special Agent Kate Dowd, asked him to inquire into the purchase of firearms from Ramos. Smokey did as requested, and Ramos eventually sold Smokey his personal firearm, as well as a second that had the firing pin removed.

As a result of this investigation, Ramos was indicted by a grand jury in an eight-count indictment. In this indictment, counts ONE, THREE, FOUR, FIVE, and SEVEN charged that Ramos had "knowingly, intentionally, and unlawfully distribute[d]" a quantity "of a mixture or substance containing a detectable amount of cocaine base, commonly known as crack, a Schedule II narcotic controlled substance." Count EIGHT charged possession with intent to distribute the same. Each of these were alleged violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Additionally, counts two and six charged Ramos with violations of 18 U.S.C. § 924(c)(1)(A)(i), alleging that he knowingly used a firearm during and in relation to a drug trafficking crime.

Ramos' trial began on November 16, 2004. At the close of the government's case, Ramos moved for a judgment of acquittal, arguing

that the government failed to produce evidence that the substance he sold was crack cocaine rather than some other form of cocaine base. The district court denied this motion. At the close of evidence, Ramos requested a jury instruction on entrapment. The district court denied that instruction.

The trial concluded on November 18, 2004, when the jury convicted Ramos on all counts. He was sentenced to 40 years in prison plus a sentence of supervised release. Ramos appeals, and we affirm.

Before proceeding, we emphasize that the special verdict form was commendably thorough. The jury answered 15 questions, going not only to guilt or innocence, but also to the quantities of cocaine base involved. *Neither Ramos nor the government takes any exception to any fact-finding of the jury*. So those answers are unimpeached.

## II.

Ramos' first assignment of error is

> THERE WAS A VARIANCE BETWEEN THE PROOF OFFERED AT TRIAL AND THE CHARGES CONTAINED IN THE INDICTMENT AS RELATED TO THE DISTRIBUTION OF COCAINE. Br. p. 7.

Ramos' sentence of 40 years was five years each on drug counts ONE, THREE, FIVE, SEVEN, AND EIGHT; 10 years on Count FOUR; concurrent sentences; five years on the first gun count (Count TWO); and 25 years on the second gun count (Count SIX), the sentences on both gun counts, TWO and SIX, to be served consecutively to the sentences on the six counts previously mentioned. J.A. 236. Each of these eight sentences was the minimum required by the statutes.

Ramos argues that the evidence is that the drugs involved in each of the drug counts was "cocaine base," and the government should have been required to prove that the cocaine base in question was crack cocaine and not some other form of cocaine base. This is argued because Ramos was sentenced under 21 U.S.C. § 841(b)(1)(A)(iii)

instead of under § 841(b)(1)(A)(ii). The sentence under (iii) is greater than the sentence under (ii) and is awarded when the drugs involved are described as "contain[ing] cocaine base." The lesser sentence under (ii) includes other forms of cocaine, but not cocaine base.

Ramos' position is not well taken for several reasons. First, the indictment was for distributing or possessing "a mixture or substance containing a detectable amount of cocaine base, commonly known as crack." The statute, § iii, provides in terms for sentencing for the substance "which contains cocaine base" and is not for some other substance. The inclusion in the indictment of the phrase "commonly known as crack" is surplusage, which does not vitiate the indictment and may be ignored. E.g., *Ford v. United States*, 273 U.S. 503, 602 (1927); *Gambrell v. United States*, 276 F.2d 180 (6th Cir. 1960). That rule is not new. *Beale's Criminal Pleading and Practice*, §§ 110, 111 (1898). That the parties and the district court obviously and correctly treated the phrase as surplusage is shown, for example, by the unobjected-to special verdict form for each of the six drug counts which do not mention crack cocaine in terms or otherwise:

> How do you find the defendant Raoul Castillo-Ramos, as to Count _____ (distribution of cocaine base) of the indictment? [or possession with intent to distribute cocaine base]
>
> Guilty _____      Not Guilty _____

At trial, the government introduced an expert in chemistry, Dr. Charles Matkovich, who testified without contradiction that the substance involved in the drug counts was "cocaine base." And, if that were not enough, the substance involved in each of the distribution drug counts, ONE, THREE, FOUR, FIVE, and SEVEN, was identified by ATF Special Agents, and by Ramos himself in Count EIGHT, in terms, as either "crack" or "crack cocaine." At the conclusion of the testimony of Dr. Matkovich, the defendant moved for a judgment of acquittal "with respect to the cocaine," and this on the ground there are several forms of cocaine base, but there was no testimony from Dr. Matkovich that the substance involved was crack cocaine, a form of cocaine base. We are of opinion the district court correctly denied the motion, if, for no other reason, than that the ATF agents and, indeed, the defendant himself as to Count EIGHT, had identified the

type of drug involved as either "crack" or "crack cocaine." Indeed, the district court, as a part of the jury instructions, referred to cocaine base as crack.

Along this same line, Ramos claims relief from his sentence because of an *Apprendi/Booker*-type error in that the jury did not find that the substance involved was crack cocaine, which he argues subjected him to the greater punishment of (iii) rather than that of (ii). There is no merit in this argument because Ramos was sentenced to the lowest sentence the statute permitted on each conviction, therefore there was no elevation of his sentence beyond that required by the jury verdict.

On the narrow question of whether or not a variance has occurred, Ramos is also not entitled to relief. "When the evidence at trial differs from what is alleged in the indictment, then a variance has occurred." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). In this case, the indictment alleged cocaine base. The statute involved required cocaine base. The evidence from Dr. Matkovich was that the samples consisted of cocaine base. The jury found distribution and presence of cocaine base. Thus, there was no variance.

### III.

The second assignment of error of Ramos is

> THE TRIAL JUDGE ERRED BY FAILING TO INSTRUCT THE JURY THAT THEY WERE REQUIRED TO MAKE A SPECIFIC FINDING THAT THE APPEL- LANT DISTRIBUTED CRACK COCAINE AS OPPOSED TO SOME OTHER FORM OF COCAINE BASE.

Because there was no objection to the jury charge and to the form of the special verdict mentioned above, for Ramos to succeed in his argument there must have been plain error on the part of the district court. We are of opinion there was not error at all, much less plain error.

The argument of Ramos is that there have been some constructions

of the sentencing statute involved which confine the enhanced sentencing under § iii to a finding that the drug must be crack cocaine, rather than merely cocaine base as required in the statute. The district court did not sentence under the Guidelines, rather it imposed the statutory minimum sentences for each of the eight crimes committed.[1] We are of opinion that the district court correctly charged the jury in the unobjected-to form of special verdict, and that the finding of the jury that the substance involved was cocaine base was sufficient to support the § iii sentence.

We are of opinion that no further inquiry is necessary than a reference to the statutory text. Congress provided that enhanced penalties would apply to "cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii). At no time did Congress use the term "crack" in the statute, despite being aware of the term. We agree with the Second Circuit that

> [w]hile we believe that Congress contemplated that "cocaine base" would include cocaine in the form commonly referred to as "crack" or "rock" cocaine, Congress neither limited the term to that form in the plain language of the statute nor demonstrated an intent to do so in the statute's legislative history. Congress used the chemical term "cocaine base" without explanation or limitation.

*United States v. Jackson*, 968 F.2d 158, 162 (2d Cir. 1992). In reaching this conclusion, we are supported by a number of our sister circuits. Accord: *United States v. Medina*, 427 F.3d 88, 92 (1st Cir. 2005); *United States v. Barbosa*, 271 F.3d 438, 466-67 (3d Cir. 2001); *United States v. Butler*, 988 F.2d 537, 542-43 (5th Cir. 1993); *United States v. Easter*, 981 F.2d 1549, 1558 (10th Cir. 1992). But see *United States v. Munoz-Realpe*, 21 F.3d 375, 377 (11th Cir. 1994); *United States v. Brisbane*, 367 F.3d 910 (D.C. Cir. 2004).[2]

---

[1]The government does not appeal the sentence imposed, indeed it joined in the request for minimum sentence on Counts TWO and SIX.

[2]Ramos relies on the case of *Brisbane*, which is simply contrary to the *Jackson* case, which we follow. He does not depend on our case of *United States v. Fisher*, 58 F.3d 96 (4th Cir. 1995), which agreed in part with the *Jackson* case, that the heavier penalty was carved out for the

For the reasons just expressed, we are of opinion there was no error in the jury instructions, or the form of special verdict, much less plain error, and that the assignment of error is without merit.

IV.

The third assignment of error is

THE TRIAL JUDGE ERRED BY REFUSING TO GIVE AN INSTRUCTION ON THE DEFENSE OF ENTRAP-MENT AS REQUESTED BY THE DEFENDANT. Br. p.14.

Ramos' entrapment argument as it relates to the fact of convictions only concerns itself with the sale of the guns mentioned in Counts TWO and SIX.

An entrapment defense has two elements: (1) government induce-ment of the crime and (2) the defendant's lack of predisposition to engage in the criminal conduct. *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993).

We review *de novo* a district court's decision to deny a criminal defendant a jury instruction on entrapment. *United States v. Phan*, 121 F.3d 149, 154 (4th Cir. 1997). Generally, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Matthews v. United States*, 485 U.S. 58, 62 (1988). However, the district court performs a threshold inquiry and determines whether there is sufficient evidence for a reasonable jury to determine that there was

"particularly harmful form of cocaine known as 'cocaine base' or 'crack,'" thus equating cocaine base and crack. *Fisher*, 58 F.3d at 99. But *Fisher* also related that "'crack' cocaine . . . is expressly separately addressed in clause (iii)." *Fisher*, 58 F.3d at 99. Subsequent to *Fisher*, we have treated cocaine base and crack interchangeably. See *United States v. Eura*, 440 F.3d 625, 627 (4th Cir. 2006). We follow here the *Fisher* reasoning which equates cocaine base with crack, as does *Jackson*.

entrapment before it gives an entrapment instruction to the jury. *United States v. Hsu*, 364 F.3d 192, 199 (4th Cir. 2004). Solicitation of the crime alone is not sufficient to grant the instruction, as that "is not the kind of conduct that would persuade an otherwise innocent person to commit a crime." *Hsu*, 364 F.3d at 200.

Ramos' argument going to his guilt-entrapment defense relates only to his weapons convictions, and is based on his contention that he was the subject of government scrutiny due only to his sales of drugs. Thus, he argues, there is no evidence that he was predisposed to use or sell firearms. This argument is foreclosed by our precedent. Predisposition is not limited only to crimes "specifically contemplate[d]" by the defendant prior to government suggestion, but encompasses decisions to commit the crime that is "the product of his own preference and not the product of government persuasion." *Hsu*, 364 F.3d at 198 (quoting *United States v. Osborne*, 935 F.2d 32, 38 (4th Cir. 1991)). "[W]hen government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted." *United States v. Harrison*, 37 F.3d 133, 136 (4th Cir. 1994).

The evidence presented at trial demonstrates that the government did not induce Ramos to act; instead, it shows that Ramos was a willing participant in the firearms sales. For example, after first refusing to part with his own personal weapon, Ramos volunteered to acquire a different firearm. That Ramos took several weeks to procure the weapon for the informant does not negate the fact that he readily volunteered to do so as soon as the request was made by the government. As a result, we find that Ramos' claim that he was an entrapped innocent party is "completely unbelievable," *Phan*, 121 F.3d at 153, and hold that the district court properly denied giving an entrapment instruction with respect to the gun sales. The district court found that there was no showing that Ramos was indisposed to selling arms until suggested by the government, and we agree.

V.

The last assignment of error that we consider is:

THE APPELLANT WAS THE VICTIM OF SENTENCING ENTRAPMENT. Br. p.15.

Ramos' contention is that

> [t]he quantity of drugs involved would have been much less but for the government agent seeking ever greater amounts of cocaine with each transaction. Given that scenario, the Appellant should not have faced punishment on the gun counts and should only have been sentenced on the quantity of drugs that was sold in the first transaction occurring on April 7 2003. Br. p.15

We have disposed of above the defendant's argument on the gun counts. With respect to the sentencing, we considered a nearly identical contention in *United States v. Jones*, 18 F.3d 1145 (4th Cir. 1994). We considered in *Jones* that the real claim was "whether the government could ever engage in conduct not outrageous enough so as to violate due process to an extent warranting dismissal of the government's prosecution, yet outrageous enough to offend due process to an extent warranting a downward departure with respect to a defendant's sentencing." *Jones*, 18 F.3d at 1154. We rejected the contention in *Jones* in these words. "We find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold." *Jones*, 18 F.3d at 1155. We follow *Jones* and "decline to adopt a similar rule that would require district courts to speculate as to the motives of, or to ascribe motives to, law enforcement authorities. Due process requires no such ruminations." *Jones*, 18 F.3d at 1155.

The record in this case does not even suggest that it was outrageous for the government to continue to purchase narcotics from Ramos even after a level of narcotics relevant for sentencing purposes had been sold.

The assignment of error claiming sentencing entrapment is without merit, and we so hold.

We have covered the assignment of error called No. V on p.15 of Ramos' brief.

The judgment of the district court is accordingly

*AFFIRMED*.